EDMUND D. CODMAN & another, trustees, *vs.* RICHARDS M. BRADLEY & another, trustees.

Suffolk.    January 21, 1909. — March 1, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equitable Restrictions. Equity Jurisdiction,* To enforce negative covenant, Injunction, Laches. *Deed,* Construction. *Covenant.*

The release of a right of entry upon real estate in case of a breach of a condition subsequent, which was believed by the parties to be in force, is a good consideration for a negative covenant creating an equitable restriction, although by the construction of the deed imposing the supposed condition it is doubtful whether the right of entry really was in existence then or not.

A covenant, signed by the different owners of five adjoining lots of land on a city street, the owners of one of the lots being four trustees, by which the owners of the five lots as one of the parties to an indenture " do severally and not jointly nor one for any other, for themselves and their respective successors, heirs and assigns, covenant with and to the " owners of two adjoining lots of land on the same street, agreeing that none of the five houses now standing on the lots and no building or buildings thereafter erected instead of them or any of them shall extend beyond the then existing front line of the houses, does not mean that the four trustees who jointly own one of the lots covenant severally as individual owners and not jointly, but means that the owners of the five lots covenant severally as the owners of each lot in regard to their respective holdings and do not covenant jointly with the owners of the other lots. In such a case it does not matter that the owners of the two adjoining lots with whom the covenant is made have different interests in the two lots.

The owners of two lots of land on a city street had rights of entry upon five adjoining lots on the same street in case of a breach of a condition contained in the deeds of such five adjoining lots, requiring that the houses on the lots should be erected " on a right line " and should be set back two feet and nine inches at least from the boundary of the lots on the street. Thereupon the owners of the two lots made an indenture with the owners of the five lots by which the owners of the two lots released their rights of entry and freed the five lots from the conditions contained in the deeds, and the indenture then proceeded as follows : " And, in consideration of the premises the . . . [the owners of the five lots] do severally and not jointly nor one for any other, for themselves and their respective successors, heirs and assigns, covenant with and to the . . . [owners of the two lots] and their heirs and assigns, that none of the five houses now standing on the lots aforesaid shall be extended in any part beyond the present front line of said houses, and that no other building or buildings which may be hereafter erected instead of them or any of them shall in any part extend or project beyond said front line, unless all the then owners of said five lots shall consent in writing to such extension or projection, and unless all the then owners of . . . [the two lots] shall also consent in writing thereunto." *Held,* that the indenture created a right enforceable in equity against all persons taking with notice of it, and that the intention of the parties creating the restriction was that their respective promises should be for the benefit of the promisees as owners of the neighboring lots and of subsequent owners of those lots, and consequently that the restriction could be enforced in equity by and against owners who were not the original parties.

In a suit in equity to enforce a restriction on land on a city street requiring that all buildings on the land shall be set back two feet and nine inches from the boundary on the street, it does not constitute laches on the part of the plaintiff that he failed to bring his bill until after the defendant had erected his building in violation of the restriction, if it appears that during the construction of the building the lower part of it was hidden from public view by the erection of a very high board fence which enclosed the premises along the sidewalk, and that the plaintiff brought his bill as soon as he discovered that a portion of the building was outside the line fixed by the restriction.

In a suit in equity to enforce a restriction on land on a city street requiring that all buildings on the land shall be set back two feet and nine inches from the boundary on the street, where the violation complained of is a stone arch projecting from the front of the building, no waiver of the right of the plaintiffs to enforce the restriction is shown by their failure to prosecute other owners of

lots subject to the same restriction who have built out certain projections in some of the higher stories of their buildings.

The right to enforce a restriction on land on a city street requiring that all buildings on the land shall be set back two feet and nine inches from the boundary on the street is not affected by the fact that the buildings in the neighborhood of the restricted land which were used for dwelling houses when the restriction was imposed have been replaced by buildings used for business purposes.

In a suit in equity to enforce a restriction on land on a city street, imposed by a covenant in a deed requiring that all buildings on the land should be set back two feet and nine inches from the boundary on the street, where the violation alleged and proved was the erection of a stone arch projecting from the front of the building and, owing to a very high board fence which had enclosed the premises along the sidewalk during the progress of the work, the plaintiff did not discover the violation of the restriction until the building was erected, it was *held*, that the plaintiff was entitled to a mandatory injunction and should not be forced to accept a payment in damages for a violation of the covenant.

BILL IN EQUITY, filed in the Superior Court on August 16, 1906, by the trustees under the will of Maria P. Codman, as the owners of the building numbered 176 on Tremont Street in Boston against the owners of the building numbered 171 on the same street, which is leased to the Boston Herald Company, for a mandatory injunction ordering the defendants to remove a stone arch which projects from the front of the building numbered 171, known as the Herald Building.

The case came on to be heard upon a motion for a final decree before *Richardson,* J., who reserved and reported it for determination by this court.

The indenture mentioned in the opinion. on which the rights of the parties depended, was as follows:

"This indenture made this twenty-ninth day of May A. D. eighteen hundred and fifty-seven by and between John Amory Codman, Henry Codman and Arthur Codman, Gentlemen, Catherine Elizabeth Codman, single woman, and Edward Codman as he is Guardian of Maria P. Codman, minor child of Henry Codman, Esquire, deceased, parties of the first part, and Moses Williams, Aaron D. Williams, George Foster Williams and David W. Williams, Trustees under the will of John D. Williams, deceased, Herman B. Inches, Joseph W. Revere, James Hayward and John P. Rice, parties of the second part, Witnesseth, Whereas John Amory, formerly of Boston, in the County of Suffolk and Commonwealth of Massachusetts, deceased, did in his life time grant and convey to divers per-

sons as hereinafter set forth five certain lots of land situated on Common Street, then so called, but now Tremont Street in said Boston, said lots now having thereon the buildings numbered 171, 172, 173, 174 and 175 on said Tremont Street, two of said lots being conveyed by his deed, dated October 12 A. D. 1811, and recorded with Suffolk Deeds, Lib. 238 Folo. 258 to John Bellows, another of said lots being conveyed by his deed of like date, recorded in Lib. 239 Folo. 106 to Charles Barrett another thereof being conveyed by his deed of like date recorded Lib. 238 Folo. 255 to Peter Banner, and the other of said lots being conveyed by his deed of like date, recorded in Lib. 252 Folo. 77 to John T. Apthorp, to each of which deeds reference is hereby made for a description of said lots. And whereas said lots were conveyed as aforesaid upon certain conditions set forth in said deeds, and whereas the parties of the second part are respectively now owners of said lots and are desirous of having the said conditions removed and the said lots discharged therefrom. Now therefore, in consideration of one dollar to each of them paid by the parties of the second part, the receipt whereof is hereby acknowledged, and in further consideration of the covenants hereinafter set forth on the part of said parties of the second part, their heirs and assigns to be kept and performed, the said John Amory Codman, Henry Codman, Arthur Codman and Catherine Elizabeth Codman do hereby remise, release and forever quitclaim unto the said parties of the second part respectively, all the title claim, interest, demand or right of entry which they or either of them now have, or at any time hereafter may or can have in, to or upon said lots or any of them under or by reason of the conditions aforesaid, or any of them, or by reason or breach of them or any of them. And the said Edward Codman, Guardian as aforesaid, for the like considerations both hereby remise, release and forever quitclaim unto the said parties of the second part respectively all the title, claim, interest, demand or right of entry which he or his said ward now has or at any time hereafter may or can have in or to upon the said lots or any of them under or by reason of said conditions or any of them, or by reason of breach of them or any of them. To have and to hold the said lots unto the said parties of the second part respectively and their respective successors, heirs, and

assigns forever discharged of said conditions, but without any manner of warranty express or implied of any nature or description on the part of the said parties of the first part of any of them, or on the part of said minor. And, in consideration of the premises the said parties of the second part, do severally and not jointly nor one for any other, for themselves and their respective successors, heirs and assigns, covenant with and to the said John Amory Codman, Henry Codman, Arthur Codman, Catherine Elizabeth Codman and Maria P. Codman, and their heirs and assigns, that none of the five houses now standing on the lots aforesaid shall be extended in any part beyond the present front line of said houses, and that no other building or buildings which may be hereafter erected instead of them or any of them shall in any part extend or project beyond said front line, unless all the then owners of said five lots shall consent in writing to such extension or projection, and unless all the then owners of the estates now numbered 176 and 177 on said Tremont Street, shall also consent in writing thereunto."

Here followed the attesting clause.

The conditions released by the foregoing indenture were as follows :

" Moreover it is hereby reserved and agreed, and the condition is, that all the said houses to be erected on said house lots shall be erected on a right line, so that no one of the said five houses shall project before another, and also that all said houses shall be set back two feet nine inches at least from the Western boundary of said lots, on Common street, and it is further reserved and agreed, and the condition is, that all the houses to be erected on the said five house lots shall be as to the number of stories and the height of them in conformity with the new block of houses to the Northward thereof on Common street, unless all the proprietors of the said five house lots should unanimously agree on some other plan, in which their several houses shall be uniform, one with the others. Provided, however, that all the houses to be erected on said lots shall be at least of the height of three stories."

*A. D. Hill,* (*R. H. Gardiner, Jr.,* with him,) for the plaintiffs.
*J. R. Dunbar & H. M. Davis,* for the defendants.

KNOWLTON, C. J. The plaintiffs, as trustees under the will

of Maria P. Codman and owners of the premises numbered 176 Tremont Street, Boston, brought this bill in equity against the owners and the lessee of the premises numbered 171 Tremont Street, to enforce a restriction upon the land of the defendants and others, which required all buildings to be set back a certain distance from the easterly line of the street. This restriction was created by an indenture made on May 29, 1857, between the owners of lots numbered 176 and 177 as parties of the first part, and the several owners of lots 171 to 175 inclusive, as parties of the second part. The parties of the first part were the five children of Henry Codman, and the parties of the second part included the predecessors in title of the present defendants who then owned lot number 171. The parties of the first part were the owners of a supposed right of entry for a breach of condition into these five lots, or either of them, if, at any time, the owner should fail to comply with a condition inserted in the deed of his lot from John Amory, dated October 12, 1811, conveying it subject to the condition that, " All the said houses to be erected on said house lots shall be erected on a right line, . . . two feet and nine inches at least from the westerly boundary of said lots on Common street," which is now Tremont Street. The parties of the first part in the indenture of 1857 were the owners of all rights which the grantor had under these conveyances of the five lots. By the indenture, they released all these rights to the respective persons who were then the owners of the five lots, and the parties of the second part, namely, these several owners, covenanted with the parties of the first part " and their heirs and assigns, that none of the five houses now standing on the lots aforesaid shall be extended in any part beyond the present front line of said houses, and that no other building or buildings which may be hereafter erected instead of them, or any of them, shall in any part extend or project beyond the said front line, unless all the then owners of said five lots shall consent in writing to such extension or projection, and unless all the then owners of the estates now numbered 176 and 177 on said Tremont street shall also consent in writing thereunto." This indenture was made for a good consideration, as between the parties of the first part and the parties of the second part, as well as between the several owners of the five lots. Under

the deeds of 1811 there was a right of entry in the grantor for
a breach of the condition in case the house to be erected on
one of these lots was erected otherwise than in compliance
with the condition.   When the indenture of 1857 was entered
into, it was evidently considered by the parties that the condi-
tion remained in force, and that a release of it might materially
affect the value of the property.   If the construction of the
original deeds was doubtful as applied to conditions then exist-
ing, a release of all the rights under them, whatever they might
be, would constitute a valuable consideration.   *Kerr* v. *Lucas*,
1 Allen, 279.   *Dunbar* v. *Dunbar*, 180 Mass. 170, 172.   The
right reserved under each of the original deeds was inheritable
and devisable.   *Hayden* v. *Stoughton*, 5 Pick. 528.   *Austin* v.
*Cambridgeport Parish*, 21 Pick. 215.   It is not contended,
and it could not successfully be contended, that the right of
'Catherine Elizabeth Codman, or of Henry Codman the younger,
passed to their trustees under their respective conveyances.
This right was not within the description in either deed of trust.
See *Rice* v. *Boston & Worcester Railroad*, 12 Allen, 141.

The contention of the defendants that their estate was not
bound because the owners of the five estates covenanted "sev-
erally and not jointly nor one for any other, for themselves and
their respective successors, heirs and assigns," is not well
founded.   This does not mean that the four trustees who jointly
owned the defendants' estate covenanted severally and as indi-
vidual owners, and not jointly, as to this ownership; but that
the several owners of the five lots covenanted severally, each as
the owner of his own lot, and not jointly with the owners of the
other lots, as to their respective holdings.   The four trustees
holding the defendants' estate covenanted as a single owner of
that property.

Nor is it material that the parties of the first part then owned
different interests in lots 176 and 177.   John Amory Codman
owned the whole of lot 177 and no part of lot 176, while the
other four had formerly owned 176 as tenants in common, but
Henry Codman had conveyed his one-fourth interest to trustees,
and Catherine E. Codman had also conveyed her like interest to
trustees.   But each of them owned a beneficial interest as *cestui
que trust*.   The interest of Maria P. Codman was bound and her

interests under the writing were protected by the act of her guardian, she then being a minor, and by her subsequent deed after she became of full age, joining with her trustees in confirming the previous execution of the indenture.

It is plain from the language of the indenture that the parties intended a restriction upon each of the five lots in favor of the owners of lots 176 and 177, and their heirs and assigns, which should be for the benefit of the lots, whoever might be the owners of them. It is equally plain that equity will enforce such a restriction. It is not important to determine whether the instrument created a legal estate in the five lots, or precisely what legal estate it created, if any. It created a right enforceable in equity against all persons taking with notice of it, actual or constructive, and this equitable right is in the nature of an easement, even if it rests on no broader principle than that equity will enforce a proper contract concerning land, against all persons taking with notice of it. *Whitney* v. *Union Railway*, 11 Gray, 359, 363, 364. *Parker* v. *Nightingale*, 6 Allen, 341, 345. In the present case it plainly appears that the intention of the parties was that their respective promises should be for the benefit of the promisees as owners of the neighboring land, and of subsequent owners of these lots. Such a promise may always be enforced in equity by an owner. *Peck* v. *Conway*, 119 Mass. 546. *Welch* v. *Austin*, 187 Mass. 256. *Bacon* v. *Sandberg*, 179 Mass. 396. *Ivarson* v. *Mulvey*, 179 Mass. 141. *Bailey* v. *Agawam National Bank*, 190 Mass. 20, 23. It is not necessary that the owner should be himself the promisee. *Parker* v. *Nightingale*, 6 Allen, 341. *Hopkins* v. *Smith*, 162 Mass. 444. *Evans* v. *Foss*, 194 Mass. 513. *Bailey* v. *Agawam National Bank*, 190 Mass. 20. *Collins* v. *Castle*, 36 Ch. D. 243. *Rogers* v. *Hosegood*, [1900] 2 Ch, 388. *Gibert* v. *Peteler*, 38 N. Y. 165. *De Gray* v. *Monmouth Beach Club House Co.* 5 Dick. 329. These considerations dispose of all questions founded on the nature of the ownership of lots 176 and 177 by the predecessors of the plaintiffs in title and others.

The plaintiffs are not barred by laches. The work had been done before they discovered that the erection was outside of the building line. As it was going on it was hidden from public view by the erection of a very high board fence which enclosed

the premises along the sidewalk. Proceedings were commenced promptly after the discovery. See *Linzee* v. *Mixer*, 101 Mass. 512, 527; *Attorney General* v. *Algonquin Club*, 153 Mass. 447.

Nor have they waived their right to enforce this restriction by their failure to prosecute certain other owners who have built out certain projections in some of the higher stories of their buildings. *Bacon* v. *Sandberg*, 179 Mass. 396, 399. *Payson* v. *Burnham*, 141 Mass. 547. *Knight* v. *Simmonds*, [1896] 2 Ch. 294. *German* v. *Chapman*, 7 Ch. D. 271. *Mitchell* v. *Steward*, L. R. 1 Eq. 541.

The change in the use of the buildings on the street since the execution of the indenture does not affect the plaintiff's right. The importance of the maintenance of a building line may be as great when buildings are used for purposes of business as when they are occupied only as dwellings. The case of *Jackson* v. *Stevenson*, 156 Mass. 496, is very different in its facts, and the decision is not applicable to the present suit. See *Evans* v. *Foss*, 194 Mass. 513; *Zipp* v. *Barker*, 40 App. Div. (N. Y.) 1; *S. C.* 166 N. Y. 621.

We are of opinion that this is a case in which the plaintiffs are entitled to a remedy by injunction, and that they should not be forced to accept a violation of the contract with a payment of damages. *Attorney General* v. *Gardiner*, 117 Mass. 492. *Sanborn* v. *Rice*, 129 Mass. 387. *Attorney General* v. *Algonquin Club*, 153 Mass. 447. *Evans* v. *Foss*, 194 Mass. 513; *Daly* v. *Foss*, 199 Mass. 104. The defendants proceeded with knowledge of the provisions of the indenture, and took their chances of the effect of their conduct upon the plaintiff's rights. Upon similar facts it has been the practice of the courts to grant a mandatory injunction. Besides cases above cited see *Hills* v. *Metzenroth*, 173 Mass. 423; *Reardon* v. *Murphy*, 163 Mass. 501; *Hamlen* v. *Werner*, 144 Mass. 396; *Bagnall* v. *Davies*, 140 Mass. 76; *Creely* v. *Bay State Brick Co.* 103 Mass. 514; *Boland* v. *St. John's Schools*, 163 Mass. 229; *O'Brien* v. *Goodrich*, 177 Mass. 32.

*Decree for the plaintiffs.*