MARGARET S. DOWNEY & another *vs.* H. P. HOOD AND SONS.
PATRICK CASSIDY & others *vs.* SAME.

Suffolk. March 17, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Deed. Way,* Private. *Easement. Eminent Domain. Equity Jurisdiction,* To
enjoin interference with private way, Injunction. *Equity Pleading and Practice,*
Decree.

Where one owning a large tract of land abutting on a highway makes and records
a plan of subdivision of the land into house lots with a private street forty feet
wide running at right angles from the highway into the tract and joining only
with a second private street thirty feet wide, which runs at right angles with
the first and which in turn joins only with a third private street thirty feet
wide running at right angles with the second and terminating in the highway,
and there are forty-four lots abutting on such private streets, and each of the
private streets bears a separate name, it is apparent that the three private
streets were intended by the owner to form a continuous passageway and that
he did not intend to make a restrictive distinction between the use of the two
openings upon the highway; and therefore one, to whom one of the lots bound-
ing upon one of the streets opening upon the highway was conveyed by a deed
referring to the plan and to the ways therein, has a right to have kept open and
unobstructed not only a passageway from his lot along the private street upon
which it abuts directly to the highway, but also a passageway from his lot along
the private street upon which it abuts to and through the second private street,
thence to and through the third and thence to the highway.
Where the owners of lots of land abutting on private streets which form three
sides of a rectangle, the fourth side of which is a public street, have rights to
use the streets for passing to and fro from and to the highway 'and to use
either opening into the highway without discrimination, and a railroad by
eminent domain takes and appropriates to its use all ·but ten feet of the
width of the transverse private street, the rights of such owners of lots remain
unimpaired in the remaining ten feet of the street.
The owner of a large tract of land in Boston abutting on a highway made and
recorded in the registry of deeds a plan of subdivision of the land into lots with
private streets wholly within the tract and forming three sides of a rectangle of
which the highway was a fourth, the only access to the highway from the lots
abutting on the streets being by the streets. Along the side of the tract oppo-
site to the highway ran a railroad. A corporation engaged in the purchase,
distribution and sale of milk purchased lots of land which were designated on
the plan and which comprised all the lots bounding on the private street which
ran parallel with the highway and joined the ends of the other two private
streets, as well as contiguous lots on the other two streets. The deeds convey-
ing the lots to the corporation all referred to, and bounded the lots by, the lots
and streets on the plan. The corporation intended to use the land for a milk
station (such a location being difficult to acquire) and for that purpose erected

fences shutting off the cross street from the two streets leading to the highway. In a suit promptly begun by owners of lots on the two streets running to the highway, seeking an injunction commanding the removal of the obstructions, a judge who heard the case on its merits, while holding that the obstructions to the streets were unlawful, refused to grant a mandatory injunction because the defendant offered to the plaintiff the use of another way parallel to and ten feet from the street which it had closed, and ordered that, upon the tender of a deed by the defendant in accordance with its offer, the plaintiff should have the option either to accept the way tendered and one dollar damages, or to seek in an action at law full damages for the obstruction of the streets. On appeal by the plaintiff from the decree, it was *held*, that a mandatory injunction should issue commanding the removal of the fences, since, having constructive notice by the recorded plan of the location and existence of the streets, the corporation had no right for its own convenience or for the profitable improvement of its property to compel the owners of other lots bounding on the streets to relinquish any part of their rights in the streets either at a valuation to be fixed by the assessment of damages, or for another way to be given in substitution.

Two BILLS IN EQUITY, filed in the Superior Court on November 9, 1907, and August 5, 1908, praying for injunctions commanding the defendant to remove obstructions which it had placed in St. Mark Street, Anson Street and Percy Street, in that part of Boston called Forest Hills, private ways shown on the plan on the following page, that it be enjoined from further obstructing those ways, and for further relief.

The cases were heard by *Fox*, J., and the evidence was taken by a commissioner.

From the bills, answers and an agreed statement of facts it appeared that the plaintiffs severally owned the lots which are shaded on the plan, that is, lots numbered 6, 7, 8, 19, 20, 22, 31 and 32, while the defendant owned the lots which are included within the heavy lines on the plan, that is, the easterly part of lot numbered 11, and lots numbered 12, 23, 24, 25, 33, 34, 35, 36, 37, 38, 48, 49, 50. The defendant's deeds of lots bordering on Percy Street had a special conveyance of all the interest of the grantors in Percy Street. The boundaries described in all the deeds in evidence were by reference to the plan of the estate of the late Rebecca Weld and to the lots and streets on that plan. Excepting as above stated, there was no especial reference to rights in St. Mark Street, Anson Street and Percy Street, all of which were private ways. The width of Anson Street as shown on the plan is forty feet; that of each of the other streets is thirty feet.

Among other agreed facts not stated in the opinion or in

the memorandum of the judge who heard the cases are the following:

"On December 24, 1894, the Old Colony Railroad Company, of which the New York, New Haven & Hartford Railroad Company is the lessee, took, by eminent domain for railroad purposes, a tract of land along the line of the location of said railroad,

Plan of Estate
of the late
Rebecca Weld
August 1887

forty-five feet wide, entering upon Percy Street, at a point seventy-five feet northerly from the southerly corner of St. Mark Street, thence running diagonally through Percy Street and across St. Mark Street to a point forty-seven and seven tenths feet westerly from the southeasterly corner of St. Mark Street, which taking was confirmed by decree of this court and after due notice and hearing compensation therefor was awarded and duly paid by the said railroad company. Subsequently, Otis

H. Weed [who then owned the tract] conveyed to the said railroad company all the land between the line of the land taken by eminent domain and Percy Street, bounding on Percy Street and including lots numbered 13 and 39 on the plan. . . . After the taking above referred to, the railroad raised its roadbed, the westerly line thereof being an embankment along the easterly side of Percy Street, about twenty feet above the level of the adjoining land, and extending into Percy and St. Mark Street . . . and being retained by a wall, built on the westerly line of the said land so taken and purchased. The shortest distance between said retaining wall and the southwest corner of Percy and St. Mark Street is now ten feet. Previous to the aforesaid taking, the railroad . . . was on a level with the land shown on the plan. The railroad company makes no objection to the obstructions complained of."

In November, 1907, the defendant built fences across Anson Street and St. Mark Street as shown on the plan.

The judge who heard the cases filed a memorandum, material portions of which were as follows:

" The facts as agreed to by the parties and as shown by the evidence are substantially as follows:

" The plaintiffs own houses and lots in Forest Hills on land which was originally the Rebecca Weld estate. This estate was bounded on the west by South Street, a public street; and on the east by the Boston & Providence Railroad. In 1887 the estate was cut up into house lots and the plan by which the lots were sold was put on record. This plan shows three forty foot streets cut through the estate, two of them running from South Street toward the railroad and the third connecting these two streets at their easterly end, so that the three streets with South Street make a quadrangle. The three new streets were named on the plan Anson, Percy and St. Mark Streets. . . .

" About 1894 the railroad took by eminent domain all the land on the west side of Percy Street and a part of Percy and St. Mark Streets at their junction, and built a retaining wall, and the distance from this retaining wall to the inner corner of Percy and St. Mark Streets is ten feet. After this taking the railroad raised its roadbed which was originally on the level with the adjoining land, about twenty feet. . . .

" In 1906 the defendant bought a strip of land across the easterly end of the Rebecca Weld estate adjoining the railroad . . . and it has erected across St. Mark Street and Anson Street fences which close to the plaintiffs and other adjoining owners the whole of Percy Street and the parts of St. Mark Street and Anson Street which are east of the fences. . . .

" This land was bought for the purpose of establishing a milk station, meaning a building into which milk can be taken from the milk trains and from which it can be loaded upon milk wagons. In order that the land may be so used it will be necessary to build over the streets which have been closed in order that the building may adjoin the car tracks. The defendant has shown by the evidence offered that it is difficult to get a place which is suitable for a milk station. Such a station must adjoin the railroad at a point where the milk trains can be quickly shifted to a siding and where they can remain without disturbing the general traffic of the road.

" I am of opinion·that the plaintiffs acquired by their deed an easement in all the streets shown on the plan to which the deed refers, and that the fences erected by the defendant are unlawful.

"I am of opinion, however, that in this case the court may properly refuse to grant a mandatory injunction in view of the offer made by the defendant to construct a more convenient way across its own land connecting Anson Street and St. Mark Street.

" The action of the railroad above referred to in elevating its roadbed and especially in encroaching on Percy Street and St. Mark Street so as to cut down the width of the streets at the narrowest point to ten feet, has rendered it impossible that these streets should ever be accepted as public streets. If allowed to remain theoretically open, it is not likely that Percy Street will ever be put in any better condition than it is in now, and it is now nearly impassable. The milk station would not in itself be a desirable neighbor, but it would probably be no more objectionable than the railroad which it would screen. I do not, however, mean to express any opinion upon the question of damages for which the plaintiffs would have a right to apply under the doctrine of *Levi* v. *Worcester Consolidated Railroad,* 193 Mass. 116. The course pursued in that case should be followed in this.

"If the defendant will provide for the plaintiffs a substituted way which the court deems suitable and sufficient an injunction against closing the old way will be denied."

The defendant having offered to the plaintiffs a right of way thirty feet wide running between Anson and St. Mark Streets, parallel to Percy Street and about ten feet from its westerly boundary, the presiding judge caused a decree to be entered that, upon the delivery or tender by the defendant to the plaintiffs of a deed conveying to the plaintiffs "for their benefit, and the benefit of all said persons now having similar rights in Percy Street, so-called, by virtue of any conveyance from the Estate of Rebecca Weld," such permanent right of way, the plaintiffs' prayer for an injunction be denied, "provided, nevertheless, in case said plaintiffs accept said new right of way . . . the defendant is enjoined from obstructing the same, together with so much of St. Mark and Percy Streets as is westerly of the easterly line of said new right of way as shown on said plan; and that the defendant shall pay to the plaintiffs the sum of one dollar for their past damages and costs of court as taxed at common law, but without prejudice to the plaintiffs' right at any time within thirty days after the entry of a final decree to file a rejection of the new right of way proposed as a substitute, and to ask full damages for the permanent loss of the right of way without such substitution, in which case the plaintiffs' prayer for an injunction is denied and they are remanded to their action at law for damages as they may elect."

The plaintiffs appealed.

*J. M. Graham*, for the plaintiffs.

*O. O. Partridge*, for the defendant.

BRALEY, J.  The executors of the will of Rebecca Weld divided a tract of land belonging to her estate into house lots, and prepared a plan designating them by numbers, with three proposed streets on which forty-four of the lots abutted. The remaining six lots fronted the highway on the south, with which the streets connected and which afforded the only means of access to the public ways. They then conveyed the premises to one Weed, describing them as "shown on the plan . . . to be recorded herewith." The deed and plan having been recorded, the subsequent deeds given by him, under which the parties derive their

respective titles, described the estate conveyed by reference to the plan, with the number of the lot and name of the street on which it is bounded. It is evident upon an inspection of a copy of the plan and from the configuration of the land, that while they are designated by different names for convenience of location or possibly to attract buyers, the streets formed a continuous passageway, so laid out that each end took its departure from the highway into which both ends also opened, affording to all abutters equal facilities of entrance and exit to their estates. The plan formed a part of the contract of sale, not only for the purpose of ascertaining the lot conveyed, but including the description of the appurtenant rights which were intended to attach. These particulars were incorporated by reference in each deed, as if they had been recited at length. *Boston Water Power Co.* v. *Boston*, 127 Mass. 374. *Lipsky* v. *Heller*, 199 Mass. 310. By this reference, and by the boundaries, the defendant, who claims under the common grantor by purchase, is estopped to deny the existence of the street for the entire distance. *Thomas* v. *Poole*, 7 Gray, 83. *Rodgers* v. *Parker*, 9 Gray, 445. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292. *Drew* v. *Wiswall*, 183 Mass. 554. *Lipsky* v. *Heller*, 199 Mass. 310.

In *Regan* v. *Boston Gas Light Co.* 137 Mass. 37, and *Pearson* v. *Allen*, 151 Mass. 79, a large tract of land having been laid out with a series of streets remote from the plaintiff's lot, it was held, that, although shown by the recorded plan, they might be closed if the private ways adjoining the lot and leading to the highways with which they connected were left unobstructed. But the present plaintiffs, even if the easement were treated as divisible into three separate streets, are entitled to have them kept open, because going in either direction they afford the only communication with the highway. It would not curtail their rights, whether they chose to use one end or the other as providing the more convenient mode of travel. Accordingly the right conveyed cannot be limited as the defendant contends, without attempting to make a restrictive distinction between the use of the entrances or exits, which we do not find the original grantors intended.

Nor was the easement as thus defined extinguished by the taking of a portion of the way in width at the point where it

came within the limits prescribed by the decree in the proceedings for the changes in the location of the railroad. Its extinguishment would have followed as to the part taken, if the entire space had been appropriated. *Central Wharf* v. *India Wharf*, 123 Mass. 567. While the plaintiffs, or their predecessors in title, presumably were compensated by the assessment of damages under R. L. c. 111, § 153, for whatever injury may have been caused to their property, they still retained their rights unimpaired in the remainder of the way, as it was left after the completion of the work.

The fences which the defendant has erected and maintained, and the building which it proposes to erect on a site including a large portion of the way, constitute an injustifiable interference with the plaintiffs' easement. *O'Brien* v. *Murphy*, 189 Mass. 353, 356. Generally, the appropriate remedy to redress an injury already inflicted, and to prevent the imposition of a greater and more permanent wrong, would be an injunction directing the defendant to remove the fences and enjoining it from erecting the proposed building over the way, while retaining the bill for the assessment of such money damages as may have been suffered. *Harrington* v. *McCarthy*, 169 Mass. 492. *O'Brien* v. *Murphy*, 189 Mass. 353. *Stewart* v. *Joyce*, 201 Mass. 301. It having been found by the trial court that because of its diminished width there was no reasonable probability that the way as to these portions at least would be accepted as a public street, and the defendant having offered to build on its own land a way in substitution, which the presiding judge deemed would be more convenient, he denied the injunction, and ordered, that if within the time fixed in the decree the plaintiffs did not accept the defendant's offer, they were to be remitted to an action at law for damages.

The defendant, having failed to justify the encroachment, urges that the equities between the parties are such that an injunction should not be ordered under the decisions of *Brande* v. *Grace*, 154 Mass. 210, and *Lynch* v. *Union Institution for Savings*, 159 Mass. 306. In these cases, although a continuous trespass was clearly established, restoration of the premises was not ordered, as the lease under which the plaintiffs held title would shortly expire. To subject the defendant to the expense of removal,

when upon expiration of the lease the additions to the premises could at once be made, would have caused an unnecessary destruction of property so disproportionate that the remedy was held to be confined to compensation in damages. A similar exception was made in *Levi* v. *Worcester Consolidated Street Railway*, 193 Mass. 116. The owner of the servient estate sold the company the fee in the land, and the construction of the road had been begun destroying the plaintiff's right of way. It was held that, the defendant having agreed to purchase and provide an equally convenient way in substitution, to require it to abandon its location by restoring the way would be inequitable.

But the conditions upon which the result in those cases is made to depend, are not found in the case at bar. The defendant had constructive notice by the recorded plan of the location and existence of the street, as well as by the description in the deed when it purchased the first parcel of land. It has not been misled by the conduct of the plaintiffs, and the work of construction has not been begun. For its own convenience, or for the profitable improvement of its property, the defendant cannot compel them to relinquish any part of their respective homesteads at a valuation to be fixed by the assessment of damages. The plaintiffs have acted promptly in the assertion and enforcement of their rights, and should be protected in the lawful enjoyment of their property, which without their consent cannot be replaced by payment of a money indemnity or by the substitution of another easement at the defendant's option. *Tucker* v. *Howard*, 128 Mass. 361. *Lynch* v. *Union Institution for Savings*, 158 Mass. 394; *S. C.* 159 Mass. 306, 308. *O'Brien* v. *Goodrich*, 177 Mass. 32. *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 183 Mass. 535, 543. *Daly* v. *Foss*, 199 Mass. 104, 109.

The decree of the Superior Court must be reversed, and in each case a decree with costs is to be entered awarding an injunction commanding the removal of the fences, and enjoining the erection of the proposed building or of any other obstruction upon the way, while retaining the bill for the assessment of damages already suffered. *Cobb* v. *Massachusetts Chemical Co.* 179 Mass. 423.

*Ordered accordingly.*