CURTIS MANUFACTURING COMPANY *vs.* SPENCER WIRE COMPANY.

Worcester.     October 5, 1909. — October 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Equity Jurisdiction*, To abate private nuisance, To enjoin continuing trespass, Mandatory injunction. *Nuisance. Trespass.*

From the master's report in a suit in equity seeking a mandatory injunction directing the removal of a wall, it appeared that the defendant was the owner of land, which was bounded on one side by a private way over which he had a right of way, and the fee of which he knew was owned by the plaintiff, that, desiring to erect a building close to the line bounding the way, which was not possible unless the foundation encroached over the line below the surface of the earth, and being told by the contractor who was erecting the building for him that " it was all right to extend foundations over the lines of streets and ways," he encroached on the way with a portion of the foundation two and forty-six one hundredths feet wide at the bottom, sixty-five one hundredths of a foot wide at the top, about fifty-five feet long, and about twelve feet deep at one end and five feet deep at

·the other, and thus appropriated to his own use land worth not more than $35. He at no time notified the plaintiff of his intentions. After the foundation was . built but before the superstructure of the building was constructed, the plaintiff notified the defendant in writing that " no encroachment' will be allowed," but the defendant went ahead with the construction of the building. The removal of that portion of the wall which was on the plaintiff's land would involve an expense to the defendant of from $825 to $1,927. The defendant in his answer offered to pay to the plaintiff whatever sum the court should adjudge to be due to it as compensation for any damages it had suffered from the acts of the defendant. *Held,* that a mandatory injunction should issue abating the nuisance, including the removal of the projecting foundation.

BILL IN EQUITY, filed in the Superior Court on March 16, 1909, seeking a mandatory injunction commanding the defendant to desist from further completing a building resting on a wall which, it was alleged, was built by the defendant within the boundaries of Webster Court, a private way the fee of which was in the plaintiff and over which the defendant had a right of way, " and that the defendant be further compelled to restore the land of the plaintiff, which [had] been disturbed by the defendant in the erection of said wall to its natural condition so far as possible." In its answer the defendant offered to pay to the plaintiff whatever sum the court should adjudge to be due to it as compensation for any damages suffered by it by reason of the extension of the wall into and under Webster Court, and disclaimed any right to an easement in the land under the way.

The case was referred to T. H. Gage, Jr., Esquire, as master, and, after the filing of his report, was heard by *Pierce,* J., who, at the request of the parties, " reserved and reported " it upon the pleadings and master's report for determination by this court. The facts are stated in the opinion.

*W. C. Mellish,* for the plaintiff.

*H. H. Thayer,* for the defendant.

HAMMOND, J. Webster Court is a private way the fee of which, subject to the defendant's right of way and to the right of the city of Worcester to maintain a sewer therein, is in the plaintiff. As to the foundation which the defendant has projected into the way, the master has found as follows:

" The respondent has projected the foundation of its building (but no part of the superstructure) over into Webster Court.

" Said projections consist of a concrete foundation twelve feet deep at its westerly end, five feet at its easterly, fifty-five and

four tenths (55.4) feet long, and extending into the limits of the way, two and forty-six hundredths (2.46) feet at the bottom, sixty-five hundredths (.65) feet at the top.

" Thus occupying one hundred thirty-six and twenty-eight hundredths (136.28) square feet.

" This foundation was begun and finished within the three weeks preceding Feb. 12, 1909.

" This foundation is substantially on a line with or below the surface of the way. The superstructure of the building sets back from the way four or five inches.

" The respondent company knew the line of the way and extended its foundation beyond said line with full knowledge thereof. It did not notify the complainant that it proposed so to do or ask consent therefor, but it was told by the contractor of the building that it was all right to extend foundations over the lines of streets and ways. With this information and in the desire to obtain as large a mill building as possible, it erected its mill on the line of the court, and extended the foundation therefor into the limits of Webster Court, the fee of which subject to the rights above mentioned was owned by the complainant. "

In this manner the master finds that the respondent has " deliberately appropriated to itself the right to project its foundation two and forty-six hundredths (2.46) feet into the limits of the court." While no part of the superstructure projects into the court, still the master has found that if this projection be cut off the remaining foundation would not be adequate to support the superstructure. In a word, the building is in part supported by the projecting part of the foundation, and that support is essential to the maintenance of the building in its present condition. And all this has been done without any claim of right, or even a plausible pretense of such a claim. The statement made to the defendant by the contractor that " it was all right to extend foundations over the lines of streets and ways," was manifestly applicable only to such ways as were public, and falls far short of showing or justifying the inference that the defendant was acting under a claim of right.

Moreover the defendant had notice. While it is true that the foundation had been laid before the defendant received the letter

from the plaintiff of February 11, 1909, still no part of the superstructure had been then built.   In the letter the defendant was told in plain and emphatic language that the plaintiff was surprised at his (the defendant's) conduct in projecting the foundation into the court, and that " no encroachments will be allowed on same . . . the bounds of which are so clearly defined." Notwithstanding this notice the defendant used this foundation as an essential support for the building, or in other words, proceeded to erect the building, considered as a whole, in part upon the court.

Here, then, is a plain, intentional violation of the right of the plaintiff as owner of the fee of the way, made under no mistake of fact, or of law,  or claim of right, and (as to a considerable part of the building) after an express warning that the owner would allow no encroachments.

That in such a case equity can give relief by way of mandatory injunction is too clear for discussion, and we do not understand the defendant to contend to the contrary.   It contends, however, that in many cases this kind of relief is refused, and the party whose right is violated has been remitted to his remedy at law upon the ground that it would be inequitable and oppressive to compel the defendant to restore things to their former condition ; and in support of this contention it has cited several cases in this State, among which are *Lynch* v. *Union Institution for Savings,* 159 Mass. 306, *Jackson.*v. *Stevenson,* 156 Mass. 496, *Harrington* v. *McCarthy,* 169 Mass. 492, and *Levi* v. *Worcester Consolidated Street Railway,* 193 Mass. 116, as well as many in other jurisdictions where this principle has been recognized and applied.   They need not be considered here in detail.

The principles governing the action of a court of equity have been considered in many recent cases beside those above mentioned.   See among others *Tucker* v. *Howard,* 128 Mass. 361, *Starkie* v. *Richmond,* 155 Mass. 188, *Methodist Episcopal Society* v. *Akers,* 167 Mass. 560, *Attorney General* v. *Algonquin Club,* 153 Mass. 447, *Codman* v. *Bradley,* 201 Mass. 361.

We see no redeeming feature in the case before us so far as respects the manner of the trespass.   Nor do we think that the fact that an injunction will impose upon the defendant an expense disproportionate to the apparent benefit to the plaintiff is

of itself enough to deprive the latter of its right to an injunction.* Nor has there been laches on the part of the latter. If, after the notice of February 11, the defendant had desisted and made no use of the foundation, the case might have presented a different aspect. But, by the further act of the defendant in erecting its building upon that foundation, it has voluntarily placed itself where the rest of the building must be separated from the projection, and under all the circumstances we think that the remedy should be commensurate with the trespass. See *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4.

It may be remarked also that we are dealing not with a right of an equitable nature, for an injury to which the remedy is only in equity, but with a legal right for an injury to which an action of trespass will lie. This building as it stands is a continuing trespass, and successive actions at law can be brought. And upon the facts found by the master there would be no apparent defense to such an action. It is manifest that after judgment in the second action the plaintiff here would be entitled under R. L. c. 186, § 3, as part of the judgment, to an order abating the nuisance. We see no reason under the circumstances of this case why it should be compelled to take this more dilatory method to enforce its rights.

*Decree for the plaintiff for an abatement of the nuisance, including the removal of the projecting foundation.*

---

* The master found "that the plaintiff up to the time of filing this bill and up to the time of the hearing has suffered no actual damage from said encroachments . . . that the fair market value of the one hundred thirty-six and twenty-eight hundredths square feet of unencumbered land in the vicinity of said way is $35.00. No evidence was introduced and I am unable to determine upon any evidence the fair market value of land occupied by the encroachments subject to the defendant's right of way over it, and with reference to the city's sewer location fifteen feet to the north, and between said land and other property of the petitioner. I find that the defendant can undo its encroachment in three ways: 1. By tearing down the end of the building and setting the foundation back. This can be done for $1,927.40. 2. By temporarily supporting the superstructure and tearing down and rebuilding the foundation. This can be done for $825.41. 3. By cutting off the projection and strengthening the foundation on its own land. This could be done for $987.14."