PAUL KERSHISHIAN vs. NAPOLEON B. JOHNSON.

Worcester.    October 2, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Equity Jurisdiction*, To enjoin continuing trespass, Mandatory injunction, Laches. *Equity Pleading and Practice.*

One, who has attempted to interfere with the rights or to appropriate the property of an owner of land and has changed the condition of the owner's real estate without right, without excuse and without being misled by the speech, silence or conduct of the owner, can be compelled by a suit in equity to undo so far as possible that which he wrongfully has done affecting the owner and to pay damages.

If a landowner employed a builder to erect a building for him and gave to him only a general direction not to get over the boundary line, and the builder did not employ a surveyor to show him where the boundary line was but shored up and adopted as the line an old fence, which was irregular and dilapidated and never had been regarded as marking the correct boundary line, and, having represented the fence to be the true boundary line to the owner of the adjoining land, who, relying upon the representation, did not object to it, erected the building in part upon land of the adjoining owner, in a suit in equity by a successor to the title of the adjoining owner seeking a mandatory injunction directing the removal of the building from the plaintiff's land, the landowner who employed the builder cannot rely in defense, as showing that he acted in good faith and merely made an honest mistake in which the plaintiff's predecessor shared, upon the fact that he gave the general direction to the builder not to get over the boundary line.

The owner of certain land desired in 1905 to erect a building which was wider than could be included in the land and sought to purchase from the adjoining owner sufficient land to permit him to carry out his purpose and, the adjoining owner refusing to sell, he directed a builder, whom he had employed, to erect a building narrower than the one originally intended, and instructed him not to get over the boundary line. The builder, without procuring the assistance of a surveyor, made no especial effort to find the boundary line, but shored up an old, irregular and dilapidated fence, which never had been regarded as showing the line, and adopted it as a boundary; and then called the adjoining owner's attention to it, who accepted an assurance of the builder that the fence was on the boundary line and that the proposed building would not encroach on the line, and said that the location was all right if it did not go over on his estate. The builder

thereupon in 1905 erected a building thirty-two feet long which, exclusive of the overhang of the eaves, encroached upon the adjoining land four feet at one end and two feet at the other.  In 1907 the adjoining owner sold his property to one who in 1908 caused his land to be surveyed and then discovered for the first time the building's encroachment, and on April 23, 1909, brought a suit in equity seeking a mandatory injunction directing the removal of the building from his land. It appeared that it would cost the defendant $500 to remove his building.  *Held,* that it did not appear that the plaintiff had been guilty of laches, that the defendant had not shown that in encroaching on the plaintiff's land he had acted in good faith and innocently, or that he had been misled by any silence, statement or conduct of the plaintiff or of his predecessor, and therefore that the plaintiff was entitled to the mandatory injunction which he sought.

A defendant in a suit in equity cannot rely as of right upon a defense that the plaintiff has been guilty of laches sufficient to bar the suit unless he sets that defense up in his answer or in a plea.

RUGG, C. J.  This is a suit in equity,* by which the plaintiff seeks to have removed a portion of a building erected on his land by the defendant.  The ends of the boundary line between land of the plaintiff and that of the defendant were marked by iron stakes driven into the ground at least as early as 1869 and 1870, when the estates now owned by these parties were conveyed by a common grantor.  One of these stakes was found by the master, who reported that the other had been removed or covered up by the structures of the defendant.  The master further reported that "the defendant owned his premises for many years.  Before 1905 there was one cottage thereon.  In 1905 the plaintiff's premises were owned by a Mrs. Wallace, his immediate predecessor in title.  In 1905 the defendant, Johnson, directed a builder to construct between the existing cottage and the premises now owned by the plaintiff another cottage twenty-two feet in width.  Johnson was told by the builder that there was not space enough to build a cottage of that dimension.  He tried to buy of Mrs. Wallace three feet of land but failed to do so and disagreed with her as to the boundary line.  The proposed cottage was thereupon cut down to eighteen feet in width and the builder instructed by Johnson to build it and not to get over the line.  The builder thereupon, without the assistance of any surveyor, proceeded to locate and erect the cottage and except as before stated Johnson knew nothing and did nothing

---

* Filed in the Superior Court on April 23, 1909.  It was referred to T. Hovey Gage, Esquire, as master, and was reserved by *Fox,* J., upon the pleadings and the master's report for determination by this court.

about the location of the cottage or the determination of the line of his premises. . . . When the builder of Johnson's cottage, . . . began to construct the same he made no especial effort to find the boundary line as indicated by deed but shored up the old fence and assumed that it was then on the line. The builder then called out Mrs. Wallace who owned and lived on the plaintiff's premises to show her the proposed location of the cottage. . . . Mrs. Wallace said the location was all right if it did not go over on her estate ; that she accepted the assurance of the builder based on his assumption of the position of the fence that the proposed cottage would not encroach upon her estate, and that during her ownership and occupancy of the plaintiff's premises, she continued to accept the builder's assurance. . . . The cottage was built within the location of the old fence as the builder had thus determined it. . . . Mrs. Wallace sold the premises in 1907 to the plaintiff and the plaintiff and Mrs. Wallace occupied the plaintiff's premises without remonstrance as to the location of the cottage until 1908. In 1908 the plaintiff had his premises surveyed for the first time and discovered the discrepancy in the boundary." *

1. It is a general principle that where a defendant, without right, without excuse, and without being misled by the speech, silence or conduct of the plaintiff, has attempted to appropriate the plaintiff's property or to interfere with his rights and has changed the condition of his real estate, the defendant is compelled to undo, so far as possible, that which he has wrongfully done affecting the plaintiff and to pay the damages. *Lynch* v. *Union Institution for Savings*, 159 Mass. 306, 308. *Harrington* v. *McCarthy*, 169 Mass. 492. *Downey* v. *Hood*, 203 Mass. 4. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448. It is urged by the defendant that there has been an honest mistake about the boundary line, and that the plaintiff's predecessor in title shared in this mistake to such an extent that there ought to be no relief in chancery. The finding of the master, however, is to the effect that the old fence, upon which the defendant chiefly relies as the basis of mistake, was irregular and dilapi-

---

* The building erected was thirty-two feet long and encroached upon the plaintiff's land four feet at one end and two feet at the other, exclusive of the overhang of the eaves.

dated, and was never regarded by the parties as a boundary line, until the defendant's builder shored it up and represented it to Mrs. Wallace as the correct line. The builder in all negotiations respecting the location of the boundary line and of the building stood in the place of the defendant. The defendant's instruction to place the cottage on his land did not relieve him of responsibility to the adjoining landowner for acts done by the builder in pursuance of this authority. The defendant made no investigation to determine the position of the boundary line, but left the whole matter to his builder without taking any precaution to see that the trust thus reposed was executed rightly. A landowner who undertakes the erection of a building cannot excuse himself for trespass upon adjoining property by showing that he gave over the location of the building wholly to his builder with only a general direction to keep inside his boundary line. Responsibility in this respect cannot be shifted to a contractor. The location of a building is in its essence as to adjoining landowners the work of a proprietor, and whoever is empowered to do it, whether by contract or employment, is for this purpose the representative of the proprietor, by whose conduct the latter is bound, and for whom he is responsible. See *Gorham.* v. *Gross,* 125 Mass. 232; *Bower* v. *Peate,* 1 Q. B. D. 321. Subsequent to the dispute as to where the boundary line was, the plaintiff's predecessor in title said to the defendant's builder that the building must not be placed on her land, and she relied on his representations that it was not so placed. She was lulled into security by his declaration. In this regard also the defendant was bound by the act of the carpenter. *Weeks* v. *Currier,* 172 Mass. 53, 55. Mrs. Wallace gave no assent whatever to the location of the building except one resting upon an assurance by the carpenter, which was materially untrue. Her rights and those of her successor in title are not adversely affected thereby. It is apparent, therefore, that the defendant fails to show that acting with reasonable precaution in good faith under an honest mistake he placed his building in part on the plaintiff's land, or that the plaintiff and his predecessor have misled the defendant to his harm by any act of commission or omission. The principle of law above stated is invoked rightly by the plaintiff.

2. The defendant has not set up the defense of laches in his answer. Hence he cannot now argue that defense as matter of right. *Stewart* v. *Joyce*, 201 Mass. 301. *Hawkes* v. *Lackey*, 207 Mass. 424, 430. Nor does any ground appear why such a defense should have been sustained even if open.

3. There is no reason why the plaintiff is not entitled to mandatory relief to the extent of requiring the removal of the defendant's building. The latter went forward in its construction without a survey, or a search for the bounds, or exercising sufficient care to ascertain the precise place of the boundary line. He took his chances in the location of his cottage after having tried in vain to buy land from the plaintiff's predecessor in title, and having had a dispute with her as to the line, and being told by her through his contractor that it must not encroach on her land, and after his agent, the carpenter, had misrepresented the location of the division line. Under these circumstances it cannot be said that acting in good faith and innocently, he inadvertently got over the line. It would be inequitable to compel the plaintiff thus to make an involuntary sale of his property to the defendant by requiring him to accept monetary damages. The fact that the defendant will be caused a large loss * by removing his building is no sufficient reason for requiring the plaintiff to part with his property against his will or for enabling the defendant to acquire an estate which he was unable to buy. It has been usual to grant injunctive relief in similar cases. *Codman* v. *Bradley*, 201 Mass. 361, and cases cited at 369. *Frost* v. *Jacobs*, 204 Mass. 1. *Stewart* v. *Finklestone*, 206 Mass. 28, 38. Cases where it has been refused, like *Levi* v. *Worcester Consolidated Street Railway*, 193 Mass. 116, *Methodist Episcopal Society* v. *Akers*, 167 Mass. 560, *Loud* v. *Pendergast*, 206 Mass. 122, and *Kendall* v. *Hardy*, 208 Mass. 20, are plainly distinguishable either in elements of unwarrantable delay or bad faith on the part of the plaintiff or good faith on the part of the defendant, which are lacking here.

*Mandatory injunction to issue, with costs.*

*J. E. Swift,* for the plaintiff.

*W. C. Mellish,* (*C. A. Cook* with him,) for the defendant.

---

\* The master found that the cost of such a removal would be $500.