## MAINE v. MULLIKEN.

1. COVENANTS—DEEDS—BUILDING RESTRICTIONS—VIOLATION.
   Defendant obtained the title of lot J subject to a restriction that the premises should be used only for residence purposes, and no residence should be erected thereon of less value than $2,500. He commenced the construction of what he claimed was a barn, but caused machinery to be moved in and commenced to use the structure for business and manufacturing purposes. Defendant had no horse or automobile; but contended that he expected in

the immediate future to make certain alterations so as to change the alleged barn into a four-family flat. The decree of the circuit court required defendant to remove the building in 90 days. *Held,* that the decree was too broad and should be modified so as to permit defendant to complete the building for residence purposes, if he should elect so to do, to be worth when completed not less than $2,500. MOORE and KUHN, JJ., dissenting.

2. DEEDS—RESTRICTIVE COVENANTS—INTERPRETATION.

If a building on property subject to building restrictions is of the required value, and is used for the purposes mentioned, it is not in violation of the restriction because it may be unsightly or offensive to the taste, or because its erection may tend to render adjacent property less valuable.

Appeal from Wayne; Codd, J. Submitted April 28, 1913. (Docket No. 124.) Decided July 18, 1913.

Bill by John Maine and others against Margaret K. Mulliken and Robert J. Davis for an injunction. From a decree for complainants, defendant Davis appeals. Modified and affirmed.

*Lodge & Brown,* for complainants.

*Jay Fuller,* for defendant Davis.

KUHN, J. *(dissenting).* The complainants are the owners of lot K and the defendant Davis of lot J, which adjoin each other on the south side of Alger avenue between Woodward avenue and John R. street in the city of Detroit. There was no building restriction in the original plat of the lots, but in 1891 lot J was sold by its owner to H. G. Lewis; the deed containing the following restriction:

"Said second party hereby agrees not to build or cause to be built on said lot any building on front of said lot of less than $1,000 in value, the same to stand 15 feet from the front of said lot line."

In 1895 Lewis conveyed the lot by deed to L. H. Weitz, containing the following restriction:

"Said lot shall be used for residence purposes only, and no residence shall hereafter be erected on said lot of less than $2,500 in value."

Weitz later conveyed the lot to Margaret K. Mulliken, and she conveyed it to defendant Davis, but these deeds contained no restrictions.

It appears that Alger avenue is about one mile north of the Grand boulevard and is in what is conceded to be one of the desirable residential sections of the city of Detroit. It is a street of attractive residences, and the residential character of the locality has always been maintained.

Complainants in 1906 erected upon lot K a double house costing about $8,000. On the front of lot J at the time of the purchase of the property by Davis there was a cottage worth $1,000, which had been built about 20 years previously. Defendant Davis is a manufacturer of screens and weather strips and previous to his purchase of lot J had maintained his residence and factory at No. 2361 Woodward avenue. When he left there he bought the buildings, tore them down, and used at least a part of the material in the construction upon lot J of the building involved in this controversy. It is the claim of complainants that they learned from the tenant who was occupying the house on lot J that Davis had told him of his purchase of the property and of his intention to erect a factory building on the rear thereof. Complainant Brown thereupon notified him in writing that he would not be permitted to use the property for any but residential purposes. No reply was made by Davis but in November, 1910, he obtained from the department of building of the city of Detroit a permit to erect a barn on the alley line, 28 feet wide, 50 feet in length, and 18 feet high. About a week later construction

was commenced on this so-called barn, and on November 15, 1910, the bill of complaint in this case was filed, alleging that defendant was erecting a building not intended for use for residence purposes and not a necessary outbuilding therefor, but that the structure was being built for business purposes, to be used as a factory for defendant's business. An *ex parte* temporary injunction was obtained. Thereupon defendant Davis and his solicitor called upon the judge who granted the injunction and informed him that the purpose of defendant was to erect a barn. The court notified complainants' solicitor, who upon being told of defendant's claim consented to the dissolution of the injunction, and the building was completed. Defendant filed a sworn answer alleging that the building was to be a barn and was not intended for factory or business purposes.

The case was heard upon pleadings and proofs, and the circuit judge, after making a personal examination of the property, made findings in part as follows:

"It seems to me that the building erected upon the lots in question is built in violation of the restrictions which provide that no building shall be put upon the property in question for anything but residence purposes. The mere statement by any person that a certain structure is a barn does not make it so. In order to judge of that the court must take into consideration all the circumstances surrounding it. In the first place, the size of the structure, as compared with the size of the house and the size of the lot, 28 feet wide by 50 feet long and 18 feet high, is hardly the size or dimensions of a barn, as such, especially in that locality, and for the house in question upon this lot. When the defendant stated that he was going to build a barn up there, I do not think he had the intention of building a barn. The testimony shows that at the time he owned neither an automobile nor a horse or any other property which would need a building for the purposes for which a barn would naturally be built. The testimony also discloses that prior to the erection of

this structure he was in business on Woodward avenue and had a shed or building adjacent thereto upon property which he did not own. These were used in the course of his business and for business purposes. When he gives up that property, he takes over the lumber in the so-called barn and buildings there and places it upon the property which he has bought on Alger avenue and erected, as is undisputed, the structure of the size mentioned. And the testimony shows that since that time he has used it for business purposes, or if not for business purposes direct for business in connection with that business. Now, the fact that it is denied that screens and window strips were manufactured there is not necessarily a denial that it was used for business purposes. Certain admissions to the effect that hereafter, after the building was constructed, two machines of the character used in his business were removed from the other plant, or anyway removed and placed in this structure, has its effect in determining the cause of this building being erected. It shows that it was the intention of the defendant at that time to have this building for business purposes. Thereafter, after this injunction was served and dissolved by Judge Hosmer, he changes the plans or modifies them for the erection of a house, as he claims. This shows that the building was not at any time intended for a barn. It seems to me, under those circumstances, that, if this restriction against the use of this block for anything but residence purposes applies to this lot J, the plaintiff is entitled to the relief asked. * * * While the remedy may be a harsh one, no other adequate relief under the circumstances can be given to the complainants. The presence of this building manifestly erected for business purposes will necessarily continue to depreciate the value of the surrounding property, and especially the property of complainants. A decree as suggested by counsel for defendants perpetually enjoining them from using this for business purposes would not accomplish all that complainants under the circumstances are entitled to. Before commencing the work an injunction was served upon defendant Davis enjoining him from erecting any building for business purposes. On assurance to the court that only a barn would be erected, the injunction was

dissolved; but, as I have already indicated in my previous finding, I believe from the testimony and an examination of the structure that it was never intended as such, and no one is to blame but the defendant himself for the necessity of this remedy. A decree may be entered accordingly."

His decree provides for the removal of the building by the defendant within 90 days and, in case of failure to comply with its terms, for a mandatory injunction to carry the decree into effect.

Complainants' proofs showed that two pieces of machinery were moved into the building and that in the fall of 1911 sounds of men and machinery at work were heard; that men were seen at work; and that men were seen coming to the factory and getting weather strips. Defendant admitted that at the time he built the structure he had no horse nor automobile to put in the barn but claims that it was his purpose after finishing the building to change it into a four-family flat and for that purpose consulted an architect and had the necessary drawings made. The position of the defendant in this cause is stated by his solicitor in his brief as follows:

"We have not attempted in this court, nor did we attempt at the trial, to show that this street was not a residential street. * * * Our contention in this case from first to last has been that we built nothing more nor less than a barn; that our permit was for a barn; that we have never used it for business purposes, and that we expect in the future to turn it into a four-family apartment for residence purposes; that none of the acts of defendant are in violation of the building restrictions on this lot."

The sole question presented is whether the circuit judge was warranted in making the findings he did and granting the relief provided for in the decree. We have before us photographs showing the appearance of the structure alleged to be a barn, and we are of the opinion that it was never the intention of the

defendant Davis to use it for the purposes for which a barn is generally used. The size and appearance of the building is strongly corroborative of complainants' contention that its purpose was a business structure. It has a floor space of approximately 2,800 square feet, and it can reasonably be urged that such a structure would not naturally be erected in such a locality as an outbuilding on a 50-foot lot, and that it is entirely out of proportion to the cottage on the property or any proper residence building which might be built thereon. The effort to subsequently change it to a four-family flat was, we are convinced, a mere subterfuge resorted to for the purpose of preventing complainants from obtaining relief. He was notified of the restrictions before he commenced the construction, but notwithstanding that fact he went on and attempted to conceal his real purpose and accomplish what he knew he could not rightfully do. As was found by the circuit judge, the result was to depreciate the value of the surrounding property and especially that of complainants.

Complaint is made that the relief granted by the court works injustice in that it is a harsh remedy, and that a permanent injunction restraining business from being carried on on lot J would be sufficient to give complainants all the relief they are entitled to. With this we cannot agree. Being satisfied that the defendant is to blame for the situation in which he finds himself, we think the language used by the court in *Stewart* v. *Finkelstone,* 206 Mass. 28, 38 (92 N. E. 37, 40, 28 L. R. A. [N. S.] 634, 138 Am. St. Rep. 370), is appropriate:

"It is strongly urged that a mandatory injunction ought not to issue, for the reason that it would operate oppressively and inequitably, and impose on the defendant a loss disproportionate to the good it can accomplish, and that the plaintiffs ought to be relegated

to financial compensation by way of damages. This remedy is a drastic one, and ought to be applied with caution, but in cases proper for its exercise, it ought not to be withheld merely for the reason that it will cause pecuniary loss. It has been found that the defendant with full knowledge of the restrictions 'deliberately attempted' to override them, and thus to deprive the district of the character given it by the restrictions. He took his chances as to the effect of his conduct with eyes open to the results which might ensue. It has been the practice of courts to issue mandatory injunctions upon similar facts. *Codman* v. *Bradley*, 201 Mass. 361, 369 [87 N. E. 591], and cases cited; *Curtis Manfg. Co.* v. *Wire Co.*, 203 Mass. 448 [89 N. E. 534, 133 Am. St. Rep. 307]; *Downey* v. *Hood & Sons*, 203 Mass. 4, 12 [89 N. E. 24]. Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity."

See, also, *McIlhinny* v. *Village of Trenton*, 148 Mich. 380 (111 N. W. 1083, 10 L. R. A. [N. S.] 623, 118 Am. St. Rep. 583, 12 Am. & Eng. Ann. Cas. 23); 22 Cyc. p. 742; *Meriwether* v. *Joy*, 85 Mo. App. 634; *Spilling* v. *Hutcheson*, 111 Va. 179 (68 S. E. 250); *Clark* v. *Martin*, 49 Pa. 289.

We are satisfied that the circuit judge, who saw and heard the witnesses in open court and who made a personal examination of the premises, reached the proper and equitable conclusion.

The decree should be affirmed, with costs.

MOORE, J., concurred with KUHN, J.

BROOKE, J. The relief granted complainants by the decree of the circuit court and affirmed by the opinion of my Brother KUHN not only goes far beyond the prayer for relief in the bill of complaint but enjoins defendant from using the structure in question in a manner not prohibited by the restrictive clause by which he is bound. Defendant must use lot J "for

residence purposes only, and no residence shall hereafter be erected on said lot of less than $2,500 in value." Complainants are entitled to a decree permanently enjoining defendants from erecting any structure upon said lot J less than $2,500 in value; said structure to be used for residence purposes only. If the building in question when completed is worth $2,500 and is used for residence purposes only, there will be no breach of the restrictive clause, and complainants will have no legal grounds for complaint. They are not entitled to have the building demolished because it is unsightly or offensive to æsthetic taste, nor because its erection may have a tendency to render their property less valuable. Their rights must be measured solely by the terms of the restriction by which defendants are bound.

Defendant Davis is granted 90 days from the date of the entry of the decree in this court in which to make the building in question comply with the terms of the restriction. Complainants may apply to the court below to have said building removed in case of failure on the part of said Davis to so comply.

The decree of the court below will be modified in accordance with these views, and neither party will recover costs.

STEERE, C. J., and MCALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred with BROOKE, J.