REAGAN *v.* MERCANTILE TRUST COMPANY.

REAGAN *v.* MERCANTILE TRUST COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

Nos. 1168, 1169. Submitted April 13, 1894. — Decided May 26, 1894.

*Reagan* v. *Farmers' Loan & Trust Co., ante,* 362, followed.

THE case is stated in the opinion.

*Mr. C. A. Culberson,* Attorney General of the State of Texas, *Mr. H. C. Coke,* and *Mr. W. S. Simkins* for appellants in both cases.

*Mr. John F. Dillon, Mr. E. B. Kruttschnitt,* and *Mr. John J. McCook* for the Mercantile Trust Company, appellee, in both cases.

*Mr. Alexander G. Cochran* and *Mr. Winslow S. Pierce* for the St. Louis Southwestern Railway Company, appellee in No. 1168, and for the Tyler Southeastern Railway Company, appellee in No. 1169.

MR. JUSTICE BREWER delivered the opinion of the court.

These are cases in which, as in those just decided, the tariff established by the Texas Railroad Commission was challenged, and with like result. The St. Louis Southwestern Railway

Company, named in the first of these cases, is called by counsel for defendants in their brief " a reorganized bankrupt concern." Its road has a total mileage, including main line and branches, of 572 miles. It would seem to be a railroad which was unwisely built, and one whose operating expenses have always exceeded its earnings. Counsel say that " it is familiarly known in Texas as a ' teazer,' and, if it ever passes beyond this interesting but unprofitable stage, even its friends will be surprised." We are not advised, and we can hardly be expected to take judicial notice of what is meant by the term " teazer," but it is clearly disclosed by the record that this was an unprofitable road.

The Tyler Southeastern Railway Company, named in the second suit, has a short road of ninety miles, and also appears as a " reorganized bankrupt concern," and one whose road has been operated with constant loss. In the record in each case is found two annual reports returned to the railroad commission, one for the year ending June 30, 1891, and the other for that ending June 30, 1892. Comparing the statements in these reports, appellants' counsel say that the business of the roads has largely increased since the establishment of the rates made by the commission, and urge that no complaint can be made of action which has resulted so favorably. But an examination shows that the report for the year ending June 30, 1891, includes only the earnings and operating expenses for the single month commencing June 1, 1891, when the new company took possession and commenced operations ; and so the enormous increase spoken of is simply the difference between the earnings and expenses for twelve months and those for one month. The bills, with their amendments, allege a decrease in the tonnage as well as a decrease in the rates.

We think, therefore, the cases come within the reasoning of the prior opinions, and that it will not do to hold that, because the roads have been operating in the past at a loss to the owners, it is just and reasonable to so reduce the rates as to increase the amount of that loss. Hence,

*The decrees here will be like those ordered in the prior cases.*