POOR et al. v. IOWA CENT. RY. CO. et al.

SHILLABER v. MINNEAPOLIS & ST. L. R. CO. et al.

(Circuit Court, S. D. Iowa, C. D. July 11, 1907.)

Nos. 2,452, 2,453.

1. COURTS—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A federal court is not without jurisdiction of a suit to restrain the enforcement of a state statute fixing railroad rates, to which the officers of the state who are charged with such enforcement are made parties defendant, on the ground that such suit is in fact one against the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½. Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

2. CORPORATIONS—STOCKHOLDERS' SUITS—EQUITY RULE 94.

Under equity rule 94, a stockholder in a railroad company cannot maintain a suit in a federal court to enjoin the company from obeying a state statute fixing freight or passenger rates, where the only effort made by the complainant to secure the desired action alleged in the bill was a demand on the directors, and the manner or reason for its refusal are not disclosed, since such refusal may have been a proper exercise of the discretionary powers vested in the directors.

In Equity. On motions for preliminary injunctions.

Geo. H. Carr and Henry V. Poor, for complainants in both cases.

Geo. W. Seevers, for both defendants.

H. W. Byers, Atty. Gen. Iowa, amicus curiæ.

McPHERSON, District Judge. The two cases above entitled are brought by holders of stock in the said two companies. The companies only are defendants. The objects of the bills of complaint are to enjoin the defendants from putting into force and carrying out the provisions of the statute passed by the recent session of the Iowa Legislature and approved by the Governor of the state February 28, 1907, taking effect July 4, 1907, commonly known as the two-cent passenger fare statute. In the case against the Iowa Central, the statute if enforced allows the company to carry passengers within the state for two cents only; but, owing to the classification, and the small earnings of the other company in the other case, two and one-half cents per passenger per mile will be allowed.

The question as to the validity of railroad rate statutes is one of great importance. It is at all times a question of much delicacy when a court is asked to hold as void an act of a state Legislature or of Congress. All doubtful questions are solved by the courts in favor of the validity of such enactments. It is when, and only when, the court has no doubt as to the invalidity, that such a decree is rendered; and, when there is no doubt, courts do not hesitate to so declare. In the so-called Granger Cases, 94 U. S. 113–187, 24 L. Ed. 77, 94, 97, 99, 102, in 1876, the Supreme Court held that a Legislature has the power to enact a maximum rate statute. In case of State v. Railroad Commissioners, 36 N. W. 305, 23 Neb. 117, and Id., 37 N. W. 782, 38 Minn. 281, the Supreme Court of Minnesota held that the rates fixed by the state commission could not be inquired into by the courts. But on writs

of error the Supreme Court of the United States reversed the decision of the Minnesota court. Chicago, M. & St. P. R. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970, and Minneapolis E. R. Co. v. Minnesota, 134 U. S. 475, 10 Sup. Ct. 473, 33 L. Ed. 985. From that time until the present, all the courts and the profession have understood that the Legislature, acting directly by statute or through a commission duly authorized, can fix maximum freight and passenger rates, subject to the right and power of the court by appropriate judicial proceedings to declare such statutes or orders void, if such rates are either confiscatory or unremunerative, for the reason that such proceedings are not due process of law, and are the taking of property without compensation, and therefore in violation of the United States Constitution. The Minnesota cases were reversed on the single proposition that the courts of that state had held that the rates thus fixed could not be inquired into by judicial proceedings. In Reagan v. Trust Company, 154 U. S. 362, 412, 14 Sup. Ct. 1047, 38 L. Ed. 1014, and Id., 154 U. S. 418, 14 Sup. Ct. 1062, 38 L. Ed. 1030, and Id., 154 U. S. 420, 14 Sup. Ct. 1062, 38 L. Ed. 1031, on proceedings in equity, the Supreme Court held that the rates thus fixed in the state of Texas were not remunerative, and were therefore void. In Smythe v. Ames, Receiver of the Union Pacific Railway Company, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, and Id., 171 U. S. 361, 18 Sup. Ct. 888, 43 L. Ed. 197, the Supreme Court held that the state freight rates thus fixed in Nebraska were void, because not remunerative. And the case of Cotting v. Kansas City Stock Yards, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, in declaring void by a bill in equity at the suit of a stockholder, a Kansas statute regulating and fixing rates of a stock yard company, while not in point on the question now before the court, is one of much importance as illustrating the various phases of the various questions. It would take many pages and much time to properly review those cases to which I have called attention. I have no such purpose. I call attention to them only to state what thus far has been decided. It has thus far been decided that the state Legislature has the power to establish the maximum railroad passenger and freight rates within the state, and that the fixing of such rates, whether done directly by the Legislature, or by a commission, is a legislative act.

It has been decided that such rates thus fixed are presumably fair and remunerative, and therefore valid, and that the company, stockholder, bondholder, or mortgagee challenging such rates has the burden of proof. It has been decided that the Circuit Courts of the United States have jurisdiction in most cases to adjudicate the questions. It is agreed by all that the state cannot regulate or control interstate rates. The business between two points within a state, over a line which a part of the distance is without the state, is interstate business, and therefore beyond the power of the state to control or regulate, as was held by the Supreme Court in Hanley v. Railroad, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333.

It has been stated several times that proceedings in equity are the most seemly and suitable to properly determine the question, and this is so, because then the Supreme Court of the United States would

on the evidence render the final decrees. As that court is the final arbiter of all questions arising under the United States Constitution, it seems to me that all patriotic persons should welcome the opportunity of finally presenting these great questions to that court. Criminal cases against ticket agents, conductors, and other subordinates are unavailing. Decisions of state Supreme Courts, and I mention them with the greatest respect, cannot make a final settlement of the questions. The Supreme Court of the United States only can render the decision, to which all will cheerfully bow and acquiesce. Whether in an equity case tried in the state courts, and taken to the Supreme Court by writ of error, can there be decided on the merits, is a question only to be suggested, and, of course, is beyond the power of this court to decide. And it has been decided that in determining whether the state rates thus fixed are remunerative, the interstate rate receipts cannot be considered. But the question argued on the hearing, of whether when the state rates, by practical effect, directly affect the interstate rates, is a question that has not yet been decided. And the question arises by suggestion of whether one person, whether a passenger or a shipper, can be charged more than a reasonable rate, in order to create earnings to make up the average, by reason of others getting rates at less than that which is reasonable. I only mention these matters to show the great importance of these and like cases. The responsibility resting upon the court is great. When these bills were presented, I directed that the Governor and Attorney General be given notice. This was not done with any thought of making them, or any other state officer, a party to the record. But it was done because there is here presented great public questions, and I deemed it seemly and courteous that those officers be given an opportunity to appear by intervention, if allowable, or otherwise, and be heard.

At this hearing the Attorney General of the state appeared as amicus curiæ only, and made two suggestions:

1. That these actions are collusive. The bills which are under oath, recite that the actions are not collusive. They are signed by eminent and reputable counsel. The only fact at all suggestive of collusion is that, no doubt, the companies will be pleased to have a decree rendered as prayed. But that is often true in judicial proceedings.

2. The Attorney General makes another, and a very important, suggestion; and that is, that this court has no jurisdiction over the state officers to adjudicate the question, even though the state officers were made parties. In my opinon the Attorney General is in error in this contention, and for the following reasons:

By section 2112 of the Iowa Code, the Iowa board of railroad commissioners have general supervision of railroads, and must investigate any alleged neglect or violations of the laws by any railway company. By section 2113, the board must investigate all complaints, and make orders. By section 2119, the state courts will enforce these orders. State officers make the classification on which passenger and freight rates are fixed. The board and other state officers, including the Attorney General, have much to do with enforcing, as well as fixing, rates, and what the earnings within the state will be. And the two-cent

statute and all others in any way affecting the rates must be construed as in pari materia. The Missouri statutes upon the subject are much like the Iowa statutes, and in construing those statutes the Supreme Court of the United States, in the case of Railroad Company v. Railroad Commissioners of Missouri, 183 U. S. 53, 22 Sup. Ct. 18, 46 L. Ed. 78, held that the state in effect is not a party, and that the United States courts would take jurisdiction. The state as a state has no pecuniary interest in the litigation, and that is the test. The fact that it may have costs to pay, or that it may be deprived of fines and penalties does not make the state in effect a party. And by reason of these facts the case of Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, is not in point, because in that case nothing but penalties was included in the controversy.

But, aside from all the foregoing, in my opinion these actions cannot be maintained. These actions are by stockholders only. The actions are against the companies only. The actions could be, and should be, by the companies against the state officers. The code of equity rules are authorized by statute, and are just as binding on this court, as if they were statutes. Rule 94 is controlling in this case. It allows a stockholder to maintain an action only when he held the stock at the time of the transaction complained of. The bill must be under oath, and must allege that there is no collusion. These things have been complied with. But the bills must go further by showing that demand was made on the companies to refuse to comply with the statute. This has been complied with. But the rule requires still more. The bills must with particularity set forth the efforts made, and the refusal. This requirement the bills do not meet. The allegations are that July 1st instant a written demand was made on the board, and on the same day the board made refusal. Was it by a bare majority, or was it a unanimous vote? There is no showing. Did the board refuse to comply because of a question of policy, or because of a belief that the rates fixed were lawful? The bill is silent, as it is as to the number of members present. The stockholders own the corporate assets, subject to indebtedness. But it is not practicable with any corporation, for stockholders to directly control the affairs, and for that reason directors are elected for limited terms to direct affairs. In the absence of fraud, or self-interest, or oppression, or acts ultra vires, and possibly some other instances, the board of directors must be allowed to control. The remedy, like in all representative government, is with the stockholders at the next election. Otherwise the one stockholder, or a minority thereof, can control the majority, particularly if he can get a single judge to agree with him, and that is substituting the one stockholder for a majority of the board.

Aside from the question as to the validity of this statute, is one of policy as to observing the statute. This, no doubt, the board considered. What other reasons they had does not appear. The demand on the board was July 1st. On the same day these bills were verified. They are printed, thereby showing that they were prepared one or more days before the demand. They were filed two days thereafter, and the next day (July 4th) presented for a restraining order, on which day the cases were set down for hearing on the 9th inst. This is not

a compliance with the rule, and to recognize such a showing would be a repetition of the abuses causing the adoption in 1881 of the rule. What those abuses were, and the reasons for the adoption of the rule, and the proper interpretation of the rule, are all covered by the case of Corbus v. Alaska Mining Company, 187 U. S. 455, 23 Sup. Ct. 157, 47 L. Ed. 256. And what was in that case decided, as well as what was then said by Justice Brewer in writing the opinion, requires this court to hold that on the showing made these actions cannot be maintained. And see Davis v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778; Kessler v. Ensley Co. (C. C.) 123 Fed. 546, 551.

Therefore the applications for writs of injunction are denied.