JAMES E. STEWART & another *vs.* BARNET FINKELSTONE & another.

Suffolk.    March 10, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Equitable Restrictions. Equity Pleading and Practice,* Parties, Costs. *Mortgage,* Right of mortgagee to enforce equitable restrictions. *Equity Jurisdiction,* To enforce equitable restrictions, Laches, Mandatory injunction.

A mortgagee of a lot of land has a right to enforce equitable restrictions placed by a former owner of a large tract of land, of which the mortgaged lot is a portion, upon all the lots in the tract for the benefit of each other in carrying out a scheme for the development of the entire tract, and for that purpose may maintain a suit in equity against any one who is violating the restrictions in the use of any other lot in the tract which is subject to them.

The mortgagee and the owner of the equity of redemption of a lot of land may join as parties plaintiff in a suit in equity for the enforcement of equitable restrictions placed upon all the lots in a large tract of land, of which their lot formerly was a part, by the former owner of the large tract for the common benefit of all of the lots therein.

Where, in a suit in equity by the owner of the equity of redemption of and of a mortgage upon certain land, seeking a mandatory injunction commanding the removal of a building built upon certain other land by one of the defendants in violation of equitable restrictions placed thereon in favor of the plaintiffs' land, a single justice who heard the case found upon oral evidence that the plaintiffs were not "aware of the defendant's intention to violate these restrictions until the building was up; in other words, I do not believe the testimony of the defendant," and it appeared that a delay in the bringing of the suit from the middle of May, when the building was "practically all up" and the infringement was discovered by one of the plaintiffs, until the following March was due in part to the lapse of time during which the plaintiff who had discovered the infringement consulted an attorney and the other plaintiff, who was out of the State, and, as the single justice found, "was largely due to the interference of the mortgagee" of the defendant's land, who "finally dissuaded the counsel selected by them [the plaintiffs] from acting for them," a further finding that the plaintiffs were not guilty of laches which would bar the suit was *held* to be warranted.

In a suit in equity in which the plaintiff asked for a mandatory injunction directing the defendant to remove such parts of a building which he had erected upon his land as violated certain equitable restrictions, it appeared that lots of land which the plaintiff and the defendant owned formerly had been owned by the same person and were a part of a larger tract which the owner laid out into lots in accordance with a plan which he recorded and that upon the lots shown on the plan he placed, in accordance with a general scheme for mutual improvement, the restrictions which the plaintiff contended the defendant had violated. The restrictions prohibited building anything other than necessary outbuildings upon the rear twenty feet of the lot, and placed the front lines of the buildings not less than ten feet from the street. When the creator of the restrictions conveyed to the defendant's grantor, which was in 1856, he stated in the deed, "A dwelling house has been erected and completed on said lot in conformity with the conditions and restrictions." That dwelling house had an ell extending into the reserved space at the rear which was two stories in height, and also had a piazza extending two feet within the reserved ten foot space in front. At about the same time a similar house was built upon the plaintiff's lot, and was being maintained there at the time of the bringing of the suit in 1907. The building which the plaintiff averred that the defendant had erected in violation of the restrictions covered substantially the whole of his lot and was five stories in height. The defendant contended that the plaintiff was barred from maintaining the suit because he himself was violating the restrictions which he sought to enforce. *Held*, that the original deed to the defendant's grantor showed that the building, such as the plaintiff was maintaining on his lot, was regarded by all parties more than fifty years before this suit as in substantial conformity with the requirements of the restrictions, and that, even if there were in the maintenance of such a building any technical infringements of the restrictions by the plaintiff, they were of so trivial a character when compared with the infringements committed by the defendant that they could not be regarded as a barrier to the maintenance of the suit.

The owner of certain land, which was subject to equitable restrictions prohibiting the erection on the rear of the lot of any building except necessary outbuildings and prescribing that the front line of the building should be ten feet back from the street, erected a building five stories in height covering the entire area of the lot. The owner of another lot of land, for the benefit of which as part of a large tract the restrictions were created, did not discover the infringements by the defendant until the building "was practically all up," and then brought a bill in equity seeking a mandatory injunction directing the removal of such portions of the defendant's building as were in violation of the restrictions. A single justice who heard the case found on evidence warranting the finding that the defendant knew of the restrictions and "deliberately attempted" to override them. *Held,* that the mandatory injunction should issue.

A court of equity has power under R. L. c. 203, § 14, in its discretion to allow to the plaintiff in a suit, in which a mandatory injunction has been issued directing the defendant to remove certain parts of a building which he had erected in violation of certain building restrictions, the sum of $107.50 which, without any previous order of the court, the plaintiff paid to a civil engineer for services rendered in accordance with orders of the plaintiff as follows: for investigating "building restrictions with plan showing relation of buildings to street line, etc.," $37.75; for a "locality plan," $54.75; for preparation for testifying and for testifying in court, $15.

BILL IN EQUITY, filed in the Supreme Judicial Court by James E. Stewart and Sidney H. Buttrick on March 27, 1907, and amended on May 23, 1907, in which Barnet Finkelstone and the Conveyancers' Title Insurance Company were defendants and the plaintiffs sought a mandatory injunction directing the defendants to remove such part of a building on certain land on that part of Massachusetts Avenue formerly Chester Street in Boston, which was owned by the defendant Finkelstone and was mortgaged to the defendant insurance company, as was in violation of certain building restrictions, which the city of Boston, the common predecessor in title, had inserted in deeds conveying the lots respectively to persons from whom the plaintiffs and the defendants derived their titles and in other deeds conveying other lots from the same tract of land, in pursuance of a general scheme of improvement of the large tract of land as described in a certain plan. The defendants' lot was numbered 18 on the plan and the plaintiffs' was numbered 12.

The restrictions alleged to have been violated were as follows: " The front line of the building which may be erected on the said lot shall be placed on a line parallel with and ten feet back from the said Chester Street. The building which may be erected on the said lot shall be of a width equal to the width of the front

of the said lot. No dwelling house or other building except the necessary outbuildings shall be erected or placed on the rear of the said lot."

The case was heard by *Loring*, J., who filed a memorandum of findings as follows, the defendant Finkelstone being therein referred to as the defendant :

" I think that the plaintiffs are entitled to a decree in this case.

" I find as a fact that the defendant took with notice of the restrictions which affected the land.

" I find as a fact that neither plaintiff was aware of the defendant's intention to violate these restrictions until the building was up; in other words, I do not believe the testimony of the defendant.

" I find also that there was no laches on the part of the plaintiffs. The delay was largely due to the interference of the mortgagee,* who finally dissuaded the counsel selected by them from acting for them, and I think that under these circumstances there has been no such laches as would prevent them from enforcing the right they had to maintain the character of this neighborhood.

" The defendant has violated the general scheme laid down in these city deeds, which began in about 1850, in two respects: In the first place, the building is not set back ten feet from the line of Massachusetts Avenue, which was then Chester Street; and, in the second place, it is five stories in height throughout and it covers nearly the whole of the rear twenty feet as well as the front forty feet of the lot. So far as the material is concerned, of which these buildings were to be constructed, it does not appear that he has violated these restrictions. The restrictions which have been violated are restrictions in perpetuity; I can have no doubt on that point.

" The defense set up is twofold, as I understand it: One defense is that there is such a change in the occupation of the property as to bring this case within the rule in *Jackson* v. *Stevenson*, 156 Mass. 496. I do not think that is true.

" I do not include, in dealing with this contention, the whole South End which is subject to these restrictions. Neither do I

---

* One Parkman, against whom the suit was discontinued before the hearing on the merits.

think it is of importance to deal with the way in which similar restrictions on Northampton Street or West Springfield Street have been dealt with. The territory here in question is Massachusetts Avenue, between Tremont Street and Washington Street, or possibly between Columbus Avenue and Washington Street. With the exception of the structures on some of the corners of the streets within this territory, there has been no change whatever in the character of the buildings (that appeared at the view which I took in company with counsel); I mean that there has been no change from the character of buildings which were contemplated by the scheme which is contained in these restrictions. I do not think that the fact that there has been a change in the structures on the corners is of sufficient moment to result in a change in the scheme as a whole. On the contrary, I find as a fact that they are not. Whatever may have been the scheme, the idea, in the minds of the parties who got up the original scheme, whatever may have been the scheme which was to exist after the twenty year period as to the use to be made of the buildings had expired, I do not see why that scheme cannot be maintained. After the twenty years had expired the scheme must have been intended to have regard to some possible occupation. The territory is a dwelling house territory to-day, excluding the corners, which do not really interfere with it as a whole, and it may well be that the purpose of the original scheme was that, after the twenty years, the people who then held the property should be entitled (though they were not restricted to dwelling-house uses) to have the property remain subject to such uses as a building not less than three stories in height, with nothing but necessary outbuildings in the rear of the lots, and set back ten feet from the line of Chester Street, would result in. That is what these plaintiffs are entitled to, and that is what this defendant has deliberately attempted to take away from them.

" The other objection of the defense is that these plaintiffs had become a party to a common understanding that this scheme should be abandoned because he has continued to be the owner of a building which has not only a kitchen in the back yard, but has a room over the kitchen. It is claimed that that is a violation of the restrictions. It is evident, and I find as a fact, that that

was a part of the original construction of that building. It is stated in the deed to Bean * that ' a dwelling-house has been erected and completed on said lot in conformity with the conditions and restrictions above mentioned.' "

A final decree accordingly was entered directing " that the defendant Finkelstone forthwith remove such portion of the building now standing on his land, being lot 18 on the plan, . . . as may be necessary to place the front line of said building on a line parallel with and ten feet back from Massachusetts Avenue, formerly Chester Street, except that a bow may be constructed on the front part of said lot 18, . . . [of certain maximum dimensions and in a certain position] . . . and to remove from the rear of said lot 18 — the rear of said lot being that portion of said lot which lies south of a line parallel with the line of Massachusetts Avenue, formerly Chester Street, and distant forty feet therefrom — all of the building now on said lot, which covers a space eleven feet wide on the easterly side of the rear of said lot as described above, and all of the building on the rest of the rear of the lot aforesaid as is above twenty feet from the level of Chester Place, on which said lot 18 abuts on the south."

The decree also ordered " that the plaintiffs recover their costs taxed at $138.77." Of this taxation, $107.50 was an amount which the plaintiffs paid to a surveyor for services rendered in accordance with three orders from the plaintiffs, the first dated February 8, 1908, " to investigate building restrictions with plan showing relation of buildings to street line, etc.," $37.75 ; the second dated April 1, 1908, " for a locality plan," $54.75, and the third dated November 2, 1908, " to prepare and testify in court," $15. It did not appear in the record that any order was made by the court as to such services of the surveyor in advance of their being rendered. The defendants did not ask to be present at the taxation of costs.

The defendant Finkelstone appealed from the final decree.

*S. C. Bennett*, for the defendant Finkelstone.

*S. M. Child*, (*M. L. Jennings* with him,) for the plaintiffs.

RUGG, J. This is a suit in equity brought to enforce compli-

---

* The defendant's predecessor in title. The deed from the city of Boston to Bean was dated January 21, 1856.

ance with certain restrictions as to buildings imposed in 1850 in deeds of the several lots comprising a considerable tract in the south end of Boston as part of a general plan for their common benefit.    The restrictions as to the character and extent of building were in perpetuity and among other matters prohibited the erection of a building nearer than ten feet to the street line and over the rear of the lot.    No question is made that the defendant * violated these two restrictions by the construction of a building commenced in March, 1906.    There was evidence that the building was " practically all up " in the May following.

It is first contended that the bill cannot be maintained in this form by the present plaintiffs.    The plaintiff Buttrick in his capacity as trustee was the owner of an estate within the protected area prior to July 28, 1906, when he conveyed it to the plaintiff Stewart, who was a *cestui que trust*, taking back a mortgage to himself as trustee.    There was evidence to the effect that this tranfer of title had been agreed upon a year before but was delayed on account of the appointment of a guardian *ad litem*.    A mortgagee of real estate, even though out of possession, has such an interest as enables him to maintain an action for any part of the mortgaged estate wrongfully severed and converted into personalty.    To this extent he is owner of the fee. *Searle* v. *Sawyer*, 127 Mass. 491.    The reason for this is that the value of his security may be damaged.    This reason extends to any act, whether done on the mortgaged premises or off, which may adversely affect the property described in his mortgage.    He may maintain an action in the nature of waste or may go into equity to prevent the commission of waste.    Restrictions like these create a right in the nature of an easement in favor of, as well as impose a liability upon, the grantee of every lot, growing out of the common character of the deeds.    The interest is in a contractual stipulation for the common benefit. *Evans* v. *Foss*, 194 Mass. 513.    The nature of the right and obligation created by restrictions upon the use of real estate is such as to render their breach an injury to the fee of other land included within the scheme of improvement.    A mortgagee is allowed to go into

---

* Throughout the opinion the defendant Finkelstone is called the defendant.

equity to prevent injuries threatened to the land covered by his mortgage, because any act in its nature capable of harming the value of his security may be such an injury as to entitle him to equitable relief and protection. Mortgagees are commonly permitted to bring suits in equity to nullify the orders of public boards or test the constitutionality of statutes, which in operation would impair their security. See for example *Reagan* v. *Farmers' Loan & Trust Co.* 154 U. S. 362, 400 ; *Reagan* v. *Mercantile Trust Co.* 154 U. S. 418; *Reagan* v. *Mercantile Trust Co.* 154 U. S. 413. This principle includes the present case. There is no distinction in reason between sustaining a suit by a mortgagee to restrain waste threatened upon the mortgaged premises and one to prevent acts on other estates in derogation of legal rights established for the benefit of the property covered by the mortgage. See *James* v. *Worcester*, 141 Mass. 361; *Everett* v. *Edwards*, 149 Mass. 588 ; *Rockwood* v. *Robinson*, 159 Mass. 406, 408; *Wilkinson* v. *Dunkley-Williams Co.* 139 Mich. 621. The act of the defendant in violating the restrictions was a continuing wrong, and not one ended with the completion of his building.

No controversy arises between the two plaintiffs as mortgagor and mortgagee respectively. They both have an interest in the subject matter of the restrictions, which as to the defendant constitutes a unity, and they may properly join in one suit against him.

The single justice found that the plaintiffs had not been guilty of laches. This finding was based upon the hearing of oral evidence, and will not be disturbed unless plainly wrong. His memorandum states that neither plaintiff was aware of the defendant's intention to violate the restrictions until his building was up. The finding is in accordance with the testimony of the plaintiffs, to which the single justice gave credence. It has been ingeniously argued that the circumstances of ownership of other property in the neighborhood and visits there, supplemented by the direct testimony of two witnesses to the contrary, shows that this finding is unsupported, at least as to the plaintiff Buttrick. But the testimony introduced by the defendant was not believed and the inferences from other facts were not inconsistent with ignorance by the plaintiffs of what the defendant was doing. In all this there was no error. The building was up about the mid-

dle of May.    The suit was brought in the following March.    This
deferment is found to have been " largely due to the interference
of " a mortgagee of the defendant's lot, who was originally
joined as a defendant in this suit, and " who finally dissuaded
the counsel selected by them [the plaintiffs] from acting for
them." There is no hard and fast rule as to what constitutes
laches.    If there has been unreasonable delay in asserting claims
or if, knowing his rights, a party does not seasonably avail him-
self of means at hand for their enforcement, but suffers his ad-
versary to incur expense or enter into obligations or otherwise
change his position, or in any way by inaction lulls suspicion of
his demands to the harm of the other, or if there has been actual
or passive acquiescence in the performance of the act complained
of, then equity will ordinarily refuse her aid for the establish-
ment of an admitted right, especially if an injunction is asked.    It
would be contrary to equity and good conscience to enforce such
rights when a defendant has been led to suppose by the word,
silence or conduct of the plaintiff that there was no objection to
his operations.    Diligence is an essential prerequisite to equitable
relief of this nature.    Quiescence will be a bar when good faith
requires vigilance.    But so long as there is no knowledge of the
wrong committed and no refusal to embrace opportunity to ascer-
tain facts, there can be no laches.    Upon the discovery of in-
fringement of rights, such reasonable expedition is required in
their prompt assertion as is consistent with due deliberation as
to the proper means for relief.    On the other hand one, who
openly defies known rights, in the absence of anything to mis-
lead him or to indicate assent or abandonment of intent to op-
pose on the part of others, is not in a position to urge as a bar
failure to take the most instant conceivable resort to the courts.
After the right has been invaded under circumstances, which
would not defeat a plaintiff in seeking relief, and no substantial
harm is shown to have accrued to the wrongdoer from delay,
there is not the same imminent necessity for early enforcement
of demands as exists before conditions have become fixed.    Mere
lapse of time, although an important, is not necessarily a decisive
consideration.    Within the somewhat flexible limitations of these
general rules, what may be laches in any case depends upon its
peculiar facts.    *Linzee* v. *Mixer*, 101 Mass. 512, 526.    *Cooke* v.

*Barrett*, 155 Mass. 413.   *Nudd* v. *Powers*, 136 Mass. 273.   *Whitney* v. *Union Railway*, 11 Gray, 359, 367.   *Haven* v. *Haven*, 181 Mass. 573, 579.   *Tucker* v. *Fisk*, 154 Mass. 574, 579.   *Hill* v. *Mayor of Boston*, 193 Mass. 569, 574.   *Parker* v. *American Woolen Co.* 195 Mass. 591, 603.   *Stewart* v. *Joyce*, 201 Mass. 301. *Daly* v. *Foss*, 199 Mass. 104.   An interval of perhaps ten weeks between the first knowledge by Buttrick and the consultation with an attorney, during which he communicated with Stewart, who was out of the State, when there is nothing to indicate that it operated to the prejudice of the defendant, cannot be accounted laches respecting so important an infraction of rights as the present case reveals.   The subsequent delay in instituting the suit is excused because it arose solely from the influence of one having a record interest in the defendant's estate.

The defendant contends that the plaintiffs cannot prevail because they are themselves violating the same restriction which they seek to enforce against the defendant.   The original deed from the city of Boston, through which the defendant gained title, contained the clause that "A dwelling house has been erected and completed on said lot in conformity with the conditions and restrictions."   The record shows that the single justice found that the constructions now upon the plaintiffs' lot were those originally placed there, and that they were substantially the same on the two lots.   It follows that they were regarded on all sides more than fifty years ago as a substantial compliance with the restrictions.   The photographs and chalks of the buildings in the neighborhood furnish some indication of like buildings upon similar lots.   Whether these constitute in small particulars technical deviations from a strict compliance with the letter of the restrictions is of no consequence after the lapse of half a century of general concurrence in a practically uniform construction of their meaning by acts done. *Frost* v. *Jacobs*, 204 Mass. 1.   *Jackson* v. *Stevenson*, 156 Mass. 496.   Moreover, the minor respects in which it is claimed that the plaintiffs have violated the restrictions are of a character wholly different from the infractions committed by the defendant, and therefore are not to be regarded as a barrier to the enforcement of their rights.   *Bacon* v. *Sandberg*, 179 Mass. 396.

The single justice, after taking a view of the neighborhood affected by the restrictions, determined that there had been no change whatever in the character of the buildings contemplated by the scheme contained in the restrictions, with the exception of those at the corners of streets, and this was not of sufficient moment to interfere with it as a whole.  This finding, supported by oral evidence as well as a view, was clearly warranted. · It leaves no room for the application of the rule of changed conditions laid down in *Jackson* v. *Stevenson*, 156 Mass. 496.  In this respect the case is like *Evans* v. *Foss*, 194 Mass. 513.

It is strongly urged that a mandatory injunction ought'not to issue, for the reason that it would operate oppressively and inequitably, and impose on the defendant a loss disproportionate to the good it can accomplish, and that the plaintiffs ought to be relegated to financial compensation by way of damages.  This remedy is a drastic one, and ought to be applied with caution, but in cases proper for its exercise, it ought not to be withheld merely for the reason that it will cause pecuniary loss.  It has been found that the defendant with full knowledge of the restrictions " deliberately attempted " to override them, and thus to deprive the district of the character given it by the restrictions.  He took his chances as to the effect of his conduct with eyes open to the results which might ensue.  It has been the practice of courts to issue mandatory injunctions upon similar facts. *Codman* v. *Bradley*, 201 Mass. 361 and cases cited at 369.  *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448.  *Downey* v. *Hood & Sons*, 203 Mass. 4, 12.  Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity. ' '

The costs allowed in the decree, including the expense of the surveyor's plans, were within the discretion of the court, which does not appear to have been wrongly exercised.  R. L. c. 203, § 14.  *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 89.

*Decree affirmed.*