### COOKE v. TAUBE.

COVENANTS—SERVANTS' QUARTERS AT REAR OF SINGLE RESIDENCE LOT. Proposed 28' x 62' structure at rear of defendants' 225' x 557' lot restricted to single residence use "excepting that servants' quarters may be erected on the rear of said property" *held*, not in violation of restriction, where it consisted of a double garage, a bedroom, a living room, a combination dinette and kitchen, and a bathroom, so long as it is erected and limited in use to servants' quarters and garage.

CARR, C. J., and DETHMERS and KELLY, JJ., dissenting.

Appeal from Berrien; Zick (Karl F.), J. Submitted November 5, 1963. (Calendar No. 43, Docket No. 50,153.) Decided December 27, 1963.

Bill by John A. Cooke, Donald H. Shook, Rose A. Shook, Myron C. Herrick, and Edith W. Herrick against Kenneth F. Taube and Elizabeth M. Taube

REFERENCES FOR POINTS IN HEADNOTE
14 Am Jur, Covenants, Conditions and Restrictions § 210 *et seq.*

for injunction restraining construction of a second residence on lot contrary to plat restrictions. Decree for plaintiffs. Defendants appeal. Reversed and remanded for entry of modified decree.

*Mollison, Hadsell & Cary* (*Robert W. Cary,* of counsel), for plaintiffs.

*Low, Iwaniuk & Boothby* (*Joseph N. Low,* of counsel), for defendants.

CARR, C. J. (*dissenting*). This suit was instituted in circuit court to enjoin an alleged violation of a building restriction to which plaintiffs claimed defendants' lot in Hill Park Estates, Niles township, Berrien county, was subject. Plaintiffs alleged in their pleading that they were also owners of lots contiguous to or located near defendants' property, and that the violation of the restriction in question would be injurious to them. The restriction to which it is asserted by plaintiffs the lots of the parties to the litigation were subject read as follows:

"Said property shall be used for residential purposes only and that there shall be erected, on said premises, only a single residence dwelling house and such outbuildings as are necessary and appurtenant thereto and that such dwelling house shall not cost less than $5,000 and that such dwelling and outbuildings shall be located at least 100 feet from the highway, excepting that servants' quarters may be erected on the rear of said property."

Plaintiffs alleged in their bill of complaint that defendants had notice of the restriction in that it appeared in and was recorded as part of the chain of title to their lot. It was further averred that defendants had for several years occupied a residence dwelling on their lot, and that in violation of the

restriction in question they were engaged in constructing an additional residence thereon, and were persisting in such construction notwithstanding notice to them by plaintiffs that their conduct, if continued, would result in injury to the property of plaintiffs. Injunctive relief was sought and upon the filing of the bill a temporary order was issued by the court restraining defendants from proceeding with the construction of a second residence dwelling on their lot.

Defendants filed answer to the bill of complaint admitting ownership of lot 6 of Hill Park Estates, but denying that their property was subject to a reciprocal negative easement in favor of the plaintiffs. It was further admitted that the original restrictions applicable provided for a single residence and pertinent outbuildings, subject to the provision that servants' quarters might be constructed on the rear of any lot subject to such restriction. It was also asserted that the construction work that they were engaged in at the time of the starting of the suit was actually for servants' quarters. They further alleged that for some time a second residence had been maintained on lot 6 with full knowledge of the plaintiffs. Testimony on the trial indicated that the building so maintained was constructed for servants' quarters and as an adjunct to defendants' residence, and that the construction at issue in this case was much larger, of better arrangement, and of more elaborate construction than the building to which defendants referred in their answer.

On the trial of the case testimony was offered with reference to conversations between the parties prior to the institution of suit, the purpose thereof being to dissuade defendants from constructing the building contemplated by the plans that they had had prepared by the builder. One of the plaintiffs, Mrs. Rose Shook, testified as follows:

"*Q.* And you advised the Taubes on that occasion that the neighbors—At that time did you advise the Taubes and Mr. Low that the neighbors were objecting to the construction of a second residence on there?

"*A.* I did. That was my point in being there, to say that we were concerned and objecting to the fact that there was a second residence being built on that property.

"*Q.* Now, then, at that time did they say what purpose the house was being built for?

"*A.* It was to be a home for Mrs. Taube, for Mr. Taube's mother.    *    *    *

"*Q.* Did you say anything about them proceeding so fast with the building?

"*A.* I asked if it could be stopped until we got some kind of a decision on it; and they informed me the house was being—that it was not going up any faster than—not as fast as what they wanted it to go up; and that they had a contract with their contractors, and that when you have such a contract you can't stop. You don't call them off; you urge them on.    *    *    *

"*Q.* Was anything said about them selling off the back end of the property at some future date?

"*A.* Mr. Taube said that if they built this house and when the older Mrs. Taube no longer needed it, then maybe he and his wife would move into it out of the larger house and either—or I don't know whether it was both—of their children would live together—but 1 of the children could have the larger house; and if it didn't work out this way then he would just sell off a piece of property with that house, off the back end of the property.

"*Q.* When you say 'that house'—

"*A.* This new residence they were anticipating building, that they started building.

"*Q.* Was there anything said at the meeting that night about the property being used as servants quarters?

"*A.* No, there wasn't. This was to be a home for Mrs. Taube."

The above testimony was not disputed and is in harmony with the following statement in defendants' answer:

"During the early discussions with certain of the plaintiffs the defendants freely acknowledged their plans, in some future years after it was no longer used for servants' quarters, to rent out the residence under construction, and to possibly occupy it themselves with 1 of their children occupying the large home, and ultimately to possibly sell it as a separate house and lot. Defendants, however, deny that their prospective and highly speculative future plans serve as a basis for any claim by plaintiffs to the relief presently requested."

Said testimony and the statement in the answer may be regarded as indicative of the view of the defendants as to the actual character of the house that they were constructing. It was to be a "residence" for the mother of defendant Kenneth Taube. Constructed according to the plans, it would be a building that could be used as a residence for defendants or that might be sold to other parties for like use. Such concept is scarcely consistent with the claim that it was in any way intended to be an adjunct to the home that defendants were occupying, and had occupied for many years, on the front portion of their lot.

The trial judge hearing the case came to the conclusion that the plans that the defendants were following contemplated the construction of a second residence on their lot, that said lot was subject to the restriction asserted on behalf of plaintiffs, and that, in consequence, the latter were entitled to the relief sought. A decree was entered accordingly, providing for the issuance of a permanent injunction restraining defendants from proceeding with the construction of the second residence on their lot and

further requiring the razing of such portion of the contemplated construction as had been accomplished. Defendants' petition for a rehearing was denied and they have appealed, claiming that the court was in error in holding that the building contemplated by the plans prepared by the builder, which plans were introduced in evidence as an exhibit, was in violation of the restriction, and that the decree should have been so drawn as to permit changing or alteration in a manner that would conform to the restriction.

It is conceded on behalf of appellants that the restrictions hereinbefore quoted apply to their lot. The primary question at issue is, in consequence, whether the building, if constructed as planned, would constitute a second residence on the lot in violation of the inhibition imposed. The trial judge concluded that the evidence on this issue was overwhelmingly in favor of the plaintiffs' contention. The plans, which are labeled as prepared for the "Residence for Mrs. Taube," indicate an overall construction 28' in width and 62' in length, including a double garage divided in the middle by a wall. The residential portion, approximately 38' × 28', was designed to include a living room, 28' × 13'6", a dining area, a kitchen, a bathroom with fixtures, and closet space. There was also provided a so-called "crawl" space under the house. The division of the contemplated garage by a wall suggests an intent of adapting it for use by the occupants of the residence to be built as well as the occupants of the house in which defendants are presently living.

Under the proofs in the case we think the trial judge came to the correct conclusion with reference to the character of the structure contemplated by the plans. Defendants at the time the suit was started, and the restraining order served, were constructing a second residence on their lot of such character that it was adapted for use independently of the home in

which they were residing. It was not merely an adjunct to that home, a necessary outbuilding, or appropriate servants' quarters. This record does not justify the conclusion that the mother of defendant Kenneth Taube, for whom the place was being built and who apparently was furnishing the money therefor, was regarded as a servant or that she had occupied, or would occupy, such position in the home of the defendants. The services that she rendered from time to time were such as involved the care of her grandchildren, and her assistance was prompted by natural affection therefor. There is no suggestion in the record that she was in any way compensated for her services or that there was any arrangement between the parties for pecuniary compensation.

Apparently at the time the restraining order was served on defendants the work of construction had not proceeded beyond the foundation. On behalf of appellants it is insisted that the decree should have been so drawn as to permit them to utilize the foundation for any purpose within the scope of the restriction. Obviously, however, the construction that had taken place contemplated the erection of the building in accordance with the plans therefor. There is nothing in the record to suggest how there can be any alteration of the foundation so as to provide for a structure that may properly be regarded as an adjunct to the residence of the defendants on the front of the lot. Appellants offered no suggestions to the trial court as to how such result might be accomplished, nor have they done so on this appeal. The trial judge concluded that alterations of the character suggested could not be made, and the decree was entered on the basis of that finding. The situation existing is emphasized by the suggestion of counsel for appellants that the structure contemplated by the plans should be regarded as servants' quarters and, hence, as an adjunct to the residence

on the front of the lot. As indicated, however, any such conclusion is not warranted by the proofs. The decree as drawn does not restrain defendants from the construction of reasonable adjuncts to their home, intended for use in connection therewith, but the fact remains that no feasible plan has been offered or suggested at any stage of this proceeding whereby such a result can be accomplished by following the plans or by the use of the foundation that has been constructed thereunder.

Defendants were charged with notice of the restrictions appearing in their chain of title. The language thereof is clear and definite. Obviously the parties contemplated a single residence with such outbuildings as might be conducive to the use and occupancy thereof. Similar situations have been before this Court in prior cases. In *Smith* v. *Byrne,* 208 Mich 104, plaintiffs sought to enjoin the violation of building restrictions providing, among other requirements, that (p 105):

"Nothing but a single private residence and the necessary outbuildings shall be erected on any 1 lot."

Referring to such restrictions, it was said by this Court (pp 108, 109):

"Its purpose is apparent. It was intended to preserve the territory for a residential district, for a place for dwelling houses and the outbuildings necessary for the enjoyment of their occupants. In other words, only such buildings additional to the residence can be constructed as are ordinarily used and occupied as aids to the use of the dwelling house. Clearly, a garage for rental purposes is not so needed.

"Defendants insist that they should not be required to remove the buildings as provided for in the decree and that the only relief which should be granted, in any event, is to enjoin the use for a pur-

pose inconsistent with the restriction. There is nothing in the record which even suggests that the building might be used for any other purpose. It should not be permitted to remain on the lot, where, to some extent, at least, it restricts plaintiffs' view unless it be a necessary outbuilding.

"The trial judge was somewhat familiar with the surroundings. Certain photographs were introduced which made the situation plain to him. It is manifest that the conclusion reached by him is likely to be more reliable than one arrived at by us from an examination of the printed record. We therefore do not feel justified in interfering with his judgment as to the necessity for such removal."

Of like import is *Nechman* v. *Supplee,* 236 Mich 116. There the defendant Supplee proceeded to the construction of a 4-family flat on a lot restricted to a single residence. The circuit court entered a decree granting the injunctive relief sought and requiring that the building be removed. Defendant-appellant claimed that such requirement was "drastic and oppressive." The Court, however, concluded that the violation of the restriction was a flagrant one, and affirmed the decree of the circuit court. In so doing the following language was quoted. (pp 124, 125) from the opinion of the Massachusetts supreme court in *Stewart* v. *Finkelstone,* 206 Mass 28, 38 (92 NE 37, 28 LRA NS 634, 138 Am St Rep 370) :

" 'It is strongly urged that a mandatory injunction ought not to issue, for the reason that it would operate oppressively and inequitably, and impose on the defendant a loss disproportionate to the good it can accomplish, and that the plaintiffs ought to be relegated to financial compensation by way of damages. This remedy is a drastic one, and ought to be applied with caution, but in cases proper for its exercise, it ought not to be withheld merely for the reason that it will cause pecuniary loss. It has been found that the defendant, with full knowledge of the

restrictions, "deliberately attempted" to override them, and thus to deprive the district of the character given it by the restrictions. He took his chances as to the effect of his conduct with eyes open to the results which might ensue. It has been the practice of courts to issue mandatory injunctions upon similar facts. (Citing cases.) Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity.' "

Another decision in this field recognizing the validity of reciprocal negative easements restricting the use of lots is *Arlt* v. *King*, 328 Mich 645. There defendants, who owned lots restricted to a single residence each, divided 2 lots and part of a third into 6 lots and proceeded to erect a cabin or cottage on each, the purpose being to rent to tourists and resorters. Other lot owners protested against such action, but apparently without effect. A decree was entered in the case enjoining defendants from using their lots for business or commercial purposes, or from renting the same for periods of less than 1 year. The latter provision was not within the scope of the restriction, and was stricken out by this Court. The injunctive relief against the use of the lots for the specified purposes was sustained. In commenting on the situation the Court said, in part (p 648):

"While there is no general uniformity of expression in the language used in the conveyances, all contained a restriction of use to residential purposes, and a large percentage also with the added restriction as to only 1 residence on a lot. The conveyances were recorded, the defendants not only had constructive notice of the restrictions, but also had actual knowledge, from their grantors and others. The record is convincing that defendants' lots were burdened with a reciprocal negative easement as to use for residence purposes only, limited to 1 residence on

each lot. The trial court did not err in finding from the testimony and the conveyances that block A was restricted to use for residences, with only 1 on each lot, was intended for substantial summer homes, with commercial use of said lots prohibited. See *Sanborn v. McLean,* 233 Mich 227 (60 ALR 1212)."

We think the foregoing cases, and others of like import, fairly indicate the position that this Court has taken on questions analogous to those involved in the instant case. Further discussion would serve no useful purpose. The trial judge correctly determined the issues involved and granted the relief to which the plaintiffs were shown by the proofs to be entitled. The decree from which the appeal has been taken should be affirmed. Plaintiffs should have costs.

DETHMERS and KELLY, JJ., concurred with CARR, C. J.

KAVANAGH, J. The facts necessary to a decision in this case are set forth in the opinion of Chief Justice CARR. Plaintiffs' bill of complaint prays for injunctive relief to restrain the construction of an additional residence on defendants' property. They claim the construction of an additional residence would be a violation of the following building restriction:

"'Said property shall be used for residential purposes only and that there shall be erected, on said premises, only a single residence dwelling house and such outbuildings as are necessary and appurtenant thereto and that such dwelling house shall not cost less than $5,000 and that such dwelling and outbuildings shall be located at least 100 feet from the highway, *excepting that servants' quarters may be erected on the rear of said property.*" (Emphasis supplied.)

Plaintiffs admit defendants have a right to build servants' quarters on the back of their property. They contend, however, that in this instance the building is not intended to be used for that purpose. They allege the proposed servants' quarters and garage, being built to replace present temporary servants' quarters, are not really servants' quarters but an additional residence.

The exhibits support other evidence in the record that the parcel of property involved was of such substantial size (225' wide and 557' deep, *i.e.*, approximately 3 acres) and elaborate landscaping, that, when considered in connection with the high value of defendants' home, the total image is one truly described as a luxurious estate.

The record discloses without dispute that the plans for the proposed servants' quarters provide for 1 bedroom, a living room, a combination dinette and kitchen, and a bathroom. Surely, such quarters could not be construed to be so pretentious as to be out of keeping with needed servants' quarters on an estate as large and elaborate as indicated above.

For this reason, we conclude the trial court erred in declaring that the proposed building could not properly be servants' quarters and in providing in the decree for a restraint on the completion of the building and for the razing of the foundation structure.

The decree of the trial court is reversed to the extent it prohibits completion of the building and requires razing of the foundation structure. The case is remanded for entry of a decree restraining the defendants from erecting, using, or selling any dwelling on lot 6 of Hill Park Estates, Niles township, Berrien county, as a second or additional residence; providing that defendants be permitted to erect the proposed servants' quarters and garage limited in use

to servants' quarters and garage; and restraining the use of the structure for any other purposes.

Defendants shall have costs.

Black, Souris, Smith, and O'Hara, JJ., concurred with Kavanagh, J.